## Case No. 17,427.

### WEST v. The UNCLE SAM.

[McAll. 505.] [1]

Circuit Court, D. California. Jan. Term, 1859.

CONTRACTUAL LIABILITY—EFFECT OF UNFORESEEN ACCIDENT—ADMIRALTY—PLEADING AND PROOF—SPECIAL DAMAGES.

1. Where a party creates a duty or charge against himself by express contract, he is bound to make it good, notwithstanding any accident through necessity, as he may have provided against such in the contract.
[Cited in Ye Seng Co. v. Corbitt, 9 Fed. 430.]

2. The pleadings in a court of admiralty are more simple and less technical than in a court of common law.

3. There are no technical variances or departures in pleadings in admiralty.

[4. In a libel against a vessel for breach of a passenger contract alleging detention, loss of time, and subjection to exposure and risk in a place designated as dangerous to human life, special damages need not be laid as in a com-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[1] [Reported by Cutler McAllister, Esq.]

mon-law declaration, but, under the general allegation, proof may be given of the detention, loss of time, and other facts showing the exposure and suffering of libelant and wife.]

[5. Cited in Simpson v. The Ceres, Case No. 12,881, to the point that torts upon the high seas are of admiralty cognizance.]

This is an appeal from the action of the district court of the United States for the Northern district of the state of California, where a decree was rendered in favor of the libelant for the sum of $800. [Case unreported.]

[For a libel by certain seamen of the Uncle Sam to recover extra wages for this voyage, see Cases Nos. 2,371 and 2,372.]

Thomas C. Hambly and H. J. Wells, for libelant.

Delos Lake and James T. Boyd, for respondent.

McALLISTER, Circuit Judge. The libel was exhibited to recover damages for the breach of a passenger contract which had been entered into for the transportation of the libelant and his wife from San Francisco to New York via the Nicaragua route; and the alleged breach consisted in not carrying them to Nicaragua; but transporting them against their consent to the Isthmus of Panama, and leaving them there to shift for themselves, and without the immediate means of escape therefrom. It appears that after leaving San Francisco with the libelant and his wife, and other passengers, on board, about five days out, the Uncle Sam was boarded by an agent from the owners, and after communication with him, the master of the Uncle Sam announced to the passengers that the destination of the vessel was changed from Nicaragua to Panama. The fact also appeared, that the steamer which was to have connected with the Uncle Sam at San Juan del Norte, and have taken her passengers to New York, had been withdrawn by the agents of her owners; and consequently libelants would have been unable, even if they had reached that place, to get away from it.

The defense set up for the breach of contract is, that the Costa-Rica army was in possession of the Nicaragua route, and that any attempt by the passengers to cross would be hazardous. In the case of Hand v. Baynes, 4 Whart. 204, defendant received for carriage certain goods from Philadelphia to Baltimore via Chesapeake and Delaware canal. On arriving at the mouth of the canal, the master was informed the locks were out of order, and that he could not be allowed to pass through the canal. He then went down to sea, and proceeded to sea, intending to go outside to Baltimore, but in a gale of wind struck on a shoal, and the ship, with the cargo, was totally lost. The following remarks are made by the supreme court of Pennsylvania, in that case: "There is no mistaking the intention of the parties:" "the route through the canal is part of the contract." There was no mistake about

the intention of the parties in this case. the route was to New York via Nicaragua. But it is said, said the court, "that although the contract was to carry the goods by way of the Chesapeake and Delaware canal, yet that the deviation from the prescribed route arose from necessity. When the master discovered the impediments to the prosecution of the voyage, through the route called for in the contract, his duty was plain; he had one of two courses to pursue,—to remain in a place of safety until the obstructions were removed; or he should have returned and informed the shippers and owners, of the impracticability of proceeding through the canal. But suppose the contract to be express, to deliver the goods in a prescribed time (or, as it may be said in this case, by a prescribed route), would any temporary obstruction, or the impossibility of complying with the engagement, arising from the condition of the locks or any other cause, be a defense to a suit for a failure to perform the contract? When the party by his own contract creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity; because he might have provided against it by the contract. This is founded in reason and authority."

The principles enunciated in foregoing case of Hand v. Baynes, are applicable to the one at bar.

But, there are other facts worthy of consideration. The existence of hostilities in Nicaragua had been known in San Francisco for some time, and the seizure by Walker of the property of the company was known at San Francisco at the time the agents of the company dispatched the Uncle Sam, entered into the contract, and pocketed the money of the libelant. When, a few days subsequently, the master of the Uncle Sam learned that the steamer that should have connected with the Uncle Sam at San Juan del Norte, had been withdrawn, and rendered impracticable the fulfillment of the contract, his duty was to have instantly retraced his course. and brought his passengers back to San Francisco. This he did not do, but consulting the wishes or what he conceived to be the interest of his owner, and treating his passengers as so much live cattle, he carried them to Panama and left them on the isthmus to shift for themselves. Had they been a drove of cattle, or a mass of merchandise, he should have had them forwarded at the expense of the owners to New York. At Aspinwall, the libelant and his wife, there being no steamer for New York, and no means of escape, were forced to remain seventeen days. A forced residence in a place whose pestilential horrors inflame the imagination of the most phlegmatic, whose unhealthiness is almost a by-word, and where illness almost unto death visited the libelant, and sickness fell upon his wife,—if not the result, certainly aggravated by the position in which they were placed by the breach of the contract by the master,—are facts. which entitle the

libelant to compensation. The amount of it was fixed by the district court at $800. This court has repeatedly decided that, as an appellate tribunal, it does not interfere with the decree of the court below on the ground of the amount of damages, unless such decree has been given as to show manifest injustice. It can perceive none such in this case.

But it is objected that no special damages are alleged in the libel, and that there is nothing but a general allegation, which is insufficient; that such allegation would not be sustained at common law; and that the pleadings in an admiralty court and in a common-law court, are the same. The libel alleges that the libelant and his wife were at Panama taken out of the Uncle Sam against their will; carried to Aspinwall, and then set down, without food, or sustenance, or accommodation of any kind; where, there being no means of leaving, no vessel to carry them away, they were detained seventeen days, at great expense: and from want of accommodation, and the well-known sickly character of the climate, were put to great expense from sickness; and that libelant has sustained, as he believes, damages thereby to the amount of two thousand dollars. Under this general allegation, the libelant gave evidence of the facts to show detention, illness, &c. That the allegation is inartificial, and not technically drawn, may be admitted. To ascertain its sufficiency, we must look to the character of the breach charged. It involved personal wrongs, constituting both mental and physical sufferings, which may be experienced and felt, but cannot be decimated into dollars and cents. One may, as the libelant did in this case, suffer from illness aggravated by the total want of accommodation and comforts, and the sickliness of the wretched place in which he was placed, and where he was forced to remain by the acts of another,—and the amount of damage can only be inferred from his detention and his situation; which facts are set forth in the libel.

In the case of Wade v Leroy, 20 How. [61 U. S.] 34, a common-law case, the allegation was general, and there was no special damage alleged. Objection was made to the proof of special facts, on the ground that the declaration contained no allegation of special damages; but evidence was admitted under the general allegation. The court say: "This evidence would certainly assist a jury to determine that the plaintiff had sustained an injury of no slight character,—an injury to his person; and which was followed by expense, suffering, and loss of time, which had for him a pecuniary value. These were the direct and necessary consequences of the injury, and sustained strictly and almost exclusively as an effect from it." That was a common-law case; and the allegation of damages was general, and mental and bodily suffering deemed sufficient for the court to act upon.

In Coppin v. Braithwaite, 8 Jur. 875, cited in Ang. Carr. (Ed. 1851) p. 508, note, a declaration in assumpsit, to carry the plaintiff in a ship to a certain place alleged, as a breach, that the defendants by their agents, caused him to disembark at an intermediate point; and the disembarkation to be conducted in a scandalous, disgraceful, and improper manner, whereby, and also by contemptuous usage and insulting language addressed to the plaintiff by the said agent, in effecting said disembarkation, the plaintiff sustained damage. Held: (1) The declaration was good, on motion in arrest of judgment. (2) That the judge had rightly received evidence of the language of the captain of the defendant's ship, in putting the plaintiff ashore. (3) That the judge had rightly directed the jury, that the defendants were responsible for any injury naturally resulting from the acts of the captain, when acting as their servant; and that the plaintiff was entitled to a fair compensation for the injury done to him in being put on shore at the intermediate place, so far as injury arose from the act of the captain in putting him on shore.

In neither of foregoing cases was the want of an allegation of special damages held to be fatal to the declaration. Both were common-law cases, where the more rigid and strict rules of that system of pleading obtain. In a court of admiralty, the question as to the sufficiency of pleadings stands on a different footing from what it does in a court of common-law. It has been earnestly urged, that the pleadings in courts of common-law and admiralty are the same, and the strictness which controls the one regulates the other. This would be strange, if true, considering the different sources from which the common law and the admiralty have arisen, and the different systems under which they have been fostered. It would be, in fact, to say there was no difference between the precise, minute, and logical mind of a special pleader of Westminster, and the expansive and capacious intellect of a Sir William Scott, or some other great advocate of admiralty practice and law.

In the case of Dupont de Nemours & Co. v. Vance, 19 How. [60 U. S.] 162, a libel was filed against the consignee of a vessel, to recover the contributory share of the salvage due from the goods which the master had voluntarily delivered to the consignee before the libel was filed; and the question arose whether the court could admit a claim for general average, in an action founded on a cause of affreightment. In that case it is clear that the promise implied by law in one case, is different from the promise to pay on the face of the bill. The causes of action were different. In a court of law it would have been difficult to have given judgment for a cause of action different from that alleged in the declaration; but in that case the court, considering the differences between the causes of action as technical, rendered a decree in favor of the libelants. Now, they rested their pow-

er to do so on the difference which existed between pleadings in courts of common law and admiralty; and in the fact, that there existed in the latter no technical rules of variance or departure.

After stating that the libelant may pray (Id. 171) generally or specially for the relief he asks, the court say: "Pleadings in admiralty are exceedingly simple, and free from technical requirements. * * * The proofs of each party must correspond substantially with his allegations, so as to prevent surprise. But there are no technical rules of variance or departure in pleading, like those of common law; nor is the court precluded from granting the relief appropriate to the case appearing on the record, and prayed for in the libel, because that entire case is not distinctly stated in the libel." This court cannot, therefore, consider that the general allegation in the libel in this case is to be deemed insufficient, which in such a case would be good, even in a declaration at common law. In a libel for the breach of a passenger-contract, consisting of personal wrongs, by way of detention, loss of time, and subjection to exposure and risk in a place designated as fraught with danger to human life, I cannot consider that special damages must be laid in analogy to a common-law declaration; but that proof under such general allegation may be given of the detention, loss of time, and any other facts to show the exposure and suffering of libelant and his wife.

A decree will be drafted affirming the decree of the court below, and handed to the judge for signature.

---

WEST (UNITED STATES v.).    See Case No. 16,667.

WEST (VARNER v.).    See Case No. 16,885.

WEST (VOWELL v.).    See Case No. 17,024.

WEST (WRIGHT v.).    See Case No. 18,102.

WEST, BRADLEY & CARY MANUF'G CO. (DOUGHTY v.).    See Case No. 4,030.