EDWIN F. McCLURE, APPELLEE, v. CITY OF BROKEN BOW, APPELLANT.

FILED APRIL 10, 1908. No. 15,110.

1. **Limitation of Actions**: OBSTRUCTION OF WATERCOURSE. Where defendant fills with earth the channel of a creek and fails to provide a sufficient outlet for the flood waters that would naturally find passage down said watercourse, so that at widely separated dates the flood waters are backed up and cast against and over plaintiff's lots and into his mill, plaintiff's cause of action will accrue at the date of the injury to his property, and not at the time of defendant's negligent acts.

2. **Waters**: OBSTRUCTION OF WATERCOURSE: DAMAGES. In such case, the measure of plaintiff's recovery is the difference in the fair market value of his property immediately before and immediately after the injury.

3. ———: ———: ACTION: INSTRUCTIONS. Upon the trial of said case, plaintiff's witnesses, if qualified, may testify to the cost of restoring said property to its condition before the injury, but it is error to instruct the jury that it may allow such cost in addition to general damages, or to instruct, in effect, that the possibility of future overflows and further injury are factors to be considered in making up a verdict for plaintiff.

APPEAL from the district court for Custer county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*J. H. Broady* and *N. T. Gadd,* for appellant.

*Sullivan & Squires* and *L. P. Main, contra.*

ROOT, C.

Action against defendant for injuries to plaintiff's mill and lots because of the alleged negligent filling of a natural watercourse and failure to provide in lieu thereof a sufficient outlet for flood waters. Plaintiff prevailed, and defendant appealed.

Defendant is a municipal corporation. By virtue of subdivision XV, sec. 69, art. 1, ch. 14, Comp. St. 1907, it had authority "to establish, alter and change the channel

of watercourses, and to wall them and to cover them over; to establish, make and regulate wells, cisterns, windmills, aqueducts, and reservoirs of water, and to provide for filling the same." Muddy creek flows through the city of Broken Bow, and drains a considerable water-shed. The natural channel of said creek was about 10 feet deep and 60 feet wide. The city council changed and straightened the course of said stream, placed 3 or 4 courses of tiling in the channel, and filled the bed of the creek with earth. The evidence demonstrates that, while the tiling remained in the creek bed, flood waters would wash the earth away from the tiling and thereby escape down the open channel. Plaintiff purchased his mill property in 1897. In 1901 the city removed the tiling from the new channel, and placed therein an iron conduit 5 feet in diameter and about 100 feet in length, slightly altered its direction as compared with that of the tiling, and filled the channel of the watercourse with earth. In August, 1903, all of the flood waters of Muddy creek could not pass through the iron pipe, and, in consequence, the surplus water backed up, overflowed the valley, and was directed toward and against plaintiff's mill, undermining its walls, filling the basement, and damaging the machinery and building. A like disastrous flood occurred in 1905.

The court on its own motion instructed the jurors: "The court instructs the jury that, if from the evidence in the case you find for the plaintiff, the measure of his damages will be ascertained by first ascertaining the fair and reasonable cost and expense, if any, of restoring the property of plaintiff to the same condition it was before the water flooded the same, and to this sum, if any you find, you will add the difference, if any, in value of the property when restored after the last flood proved to have caused damage with the channel running as it did before the defendant fixed the same, if you find it did fix the same, and as it now runs, but in no event can you allow dam-

28

ages in a sum greater than the value of the plaintiff's property." The instruction is not as definite as those ordinarily given by the learned judge, but, when read in connection with the testimony admitted, amounts to an instruction that the jury first allow plaintiff the cost of restoring his property to its condition immediately before the flood, and then add to that sum the difference between the value of the property immediately before and immediately after the change of the channel of Muddy creek.

The witness Renau qualified as to the value of the property, and was asked: "Q. Do you know what was the total value of the mill property including the real estate, building and machinery, assuming that to have been $1,500 prior to the time that the iron pipe was placed across the avenue and prior to the time the flood occurred? A. Yes, sir. Q. What was the value? A. Four thousand dollars. Q. Now, what was the value of the property, assuming that the damage by the flood had been repaired so that the building was in as good condition as it was prior to the flood, after the flood of 1905; do you know? A. Yes, sir. Q. Now, what was the value subsequent to the floods of 1903 and 1905? Q. Now, leaving out of consideration the improvements he has put in, and taking into consideration the permanent damage, what was it worth, without the improvements he has put in, and including in your estimation the way the pipe is? A. It would make a difference of $1,000 in the property with the pipe running against the corner of it." Additional testimony of the same character was admitted. The pipe did not touch plaintiff's property nor interfere with access thereto. Only twice in four years has water damaged the mill, and such floods may not occur again within a generation. The case was presented to the jury upon the theory that changing the channel of Muddy creek and substituting the iron pipe for the tiling in 1901 depreciated the value of plaintiff's property, and that said damage could be recovered in 1906, in addition to the cost of repairing the mill. The city pleaded the statute of limi-

tations, and objected to the introduction of the quoted testimony. If the acts of defendant in 1901 gave plaintiff cause for action, his suit was barred by the statute of limitations before the commencement of this suit. *Chicago, B. & Q. R. Co. v. O'Connor,* 42 Neb. 90; *Chicago, R. I. & P. R. Co. v. O'Neill,* 58 Neb. 239. If, as seems more probable, plaintiff's cause of action accrued at the time his property was injured, then the measure of his recovery would be the difference between the fair market value of his property immediately before and immediately after the injury. *Chicago, B. & Q. R. Co. v. Emmert,* 53 Neb. 237; *Fremont, E. & M. V. R. Co. v. Harlin,* 50 Neb. 698. We know of no principle of law that will permit the property owner to recover the difference between the value of his property before and after injury, and in addition thereto the cost of repairing it. The cost of repairs would be included in the general damage, and might be testified to, so that the jurors would be satisfied that the witnesses who testified to the amount of damage had some subsantial basis for their estimate.

For the error of the court in giving said instruction, it is recommended that the judgment of the district court be reversed and that a new trial be granted.

FAWCETT and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and a new trial granted.

REVERSED.