No. 18,876.

JOSEPHINE B. THOMAS, doing business as J. Thomas & Son, *Appellant*, v. R. H. WARRENBURG et al., *Appellees*.

#### SYLLABUS BY THE COURT.

1. ERRONEOUS INSTRUCTIONS — *Rendered Harmless by Verdict.* Ordinarily an instruction which impliedly justifies a larger verdict than the law or the evidence warrants becomes harmless when it appears that the verdict returned was much less than it might have been under the evidence and the law correctly stated.

2. EXPRESS WARRANTY—*Instructions.* When the evidence clearly shows an express warranty of material purchased, an instruction as to an implied warranty may be deemed immaterial.

3. DEFECTIVE BUILDING MATERIAL—*Measure of Owner's Damages.* A mere defect in a building which can be remedied by repair entitles the owner to the cost of such repair, and he is not confined to a recovery from the contractor of the difference between the value of the building as constructed and its value as contracted for.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed June 6, 1914. Affirmed.

*Clad Hamilton, Clay Hamilton,* both of Topeka, and *R. P. Kelley,* of Eureka, for the appellant.

*Howard J. Hodgson, S. F. Wicker,* and *Gordon A. Badger,* all of Eureka, for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to recover $402.92 and interest claimed to be due on a bill for lumber and other building material. The defendant, R. H. Warrenburg, denied the indebtedness, and by way of cross-petition· set up a counterclaim, alleging that he purchased the material at an agreed sum, and that the same was to be of first-class quality, and was impliedly and expressly. guaranteed to be of such quality and suitable for the purpose for which it was bought; that the plaster, sand, lime, cement and lath furnished were of inferior quality and unsuitable for the desired purpose, the defects therein being latent and not discoverable by the defendant until after the material had been placed in the building, the result being that after the completion of the house "the plaster upon the walls and ceiling of each room began to expand, and vast number of spots in the walls and ceiling were blown off, leaving an indenture in the wall and scattered the plastering and sand and cement upon the floors, which said small holes in the wall vary in size from very small to the size of a silver dollar, leaving the walls and ceiling in a worthless and useless condition and entirely destroying the body and symmetry of the walls and ceiling in the various rooms. That said walls were decorated and a large amount of finished work done upon the casing and frames, and that by reason of the popping out and expansion of this large number of holes and spots in the walls and ceiling of the rooms, the finished work of said rooms as herein set out were badly injured and destroyed." It was alleged that the defendant was thus damaged in the sum of $589, for which he asked judgment over the amount which the plaintiff claimed to be due.

There appears to have been no dispute about the balance sued for, and the jury returned a verdict for the plaintiff for $100, which was in effect allowing the

defendant $302.92 and interest as damages to be cred-
ited on the bill. The plaintiff appeals and complains
that the amount allowed the defendant was excessive;
that there was no implied warranty, and the court in
its instruction applied the wrong measure of damages.
One witness testified that to replaster, the casing and
the woodwork would have to be taken off and the fin-
ished floors protected, which he estimated would cost
from $225 to $330. Another stated that it would cost
about $385 to refinish the walls. Another that to re-
finish and paint the woodwork would be worth about
$200, so that the amount agreed upon by the jury was
well within the limits fixed by the evidence. Complaint
is made of an instruction to the effect that if the jury
should find that the defendant was damaged in the
manner claimed in a sum less than the amount sued for
the verdict should be for the plaintiff for the balance,
if for a greater amount the verdict should be for the
defendant for the difference, but in any event no more
than $589. It is urged that this naturally had the
effect of leading the jury to believe that it was within
their province to find affirmatively for the defendant in
the sum of $589, which would mean that he could re-
cover that amount in addition to wiping out the balance
sued for, which would make the sum $991.92. In view
of the fact that the most that the defendant alleged was
damage in the sum of $589, and as there was no dispute
about the amount sued for being due, it was erroneous
thus to instruct, but as the jury returned a smaller
amount than they might have done under the evidence,
the error was manifestly harmless.

It is urged that the verdict does not indicate whether
it was based upon an implied or expressed warranty,
and assuming that it was upon the former, the plaintiff,
under the law, was not liable for latent defects, and that
an instruction touching this matter was erroneous. But
there was direct testimony by the defendant that the
plaintiff's agent said the material was guaranteed first-
class, and the agent also testified that he had agreed to

furnish first-class material. It would seem, therefore, that the question of implied warranty, together with the instruction thereon, became immaterial.

While the cost of the building is not shown, it appears that it was a house of nine rooms, besides closets and halls, the material for which was to cost in the neighborhood of $1000. The court instructed that if the jury found the defendant was damaged in the manner alleged the measure thereof would be the expense reasonable and necessary to be incurred in putting the house in such a reasonable state of excellence as was contemplated by the parties when the material was purchased, including the expense of protecting the building from further damages in the performance of the work. The defendant complains of this and insists that the true measure was the difference between the value of the work furnished and that which was contracted for, and numerous authorities of other states are cited in support of this contention, also *Meyer v. Rosedale*, 84 Kan. 302, 113 Pac. 1043. In the latter case, however, it was said that under the evidence the rule prescribed by the court that the amount of damages, if any, should be the cost of restoring the building to the same condition in which it was before the injury occurred was the correct rule. It appears to be well established in this state that when there is a mere defect in a building which can be remedied by repair the measure of damages is the cost of such repair rather than the difference between the value of the building as constructed and that contracted for. (*Kerns v. Kansas City*, 79 Kan. 562, 100 Pac. 624; *McCollough v. Hayde*, 82 Kan. 734, 109 Pac. 176; *Meyer v. Rosedale*, 84 Kan. 302, 113 Pac. 1043; *McCune v. Ratcliff*, 88 Kan. 653, 129 Pac. 1167; *Lofsted v. Bohman*, 88 Kan. 660, 129 Pac. 1168.) In the latter case it was said:

"It is only when the building so far departs from the one contracted for that there is no substantial compliance with the contract that the one actually con-

structed and the one agreed to be erected are to be valued separately, so that the defendant may be required only to pay whatever the former is shown to be actually worth." (p. 663.)

No materially prejudicial error appearing in the record, the judgment is affirmed.