ECCE H. THRAPP, APPELLEE, V. ISAAC N. MEYERS, APPELLANT.

FILED JUNE 8, 1926.     NO. 24171.

1. Negligence: QUESTION FOR JURY. Under the circumstances of this case as shown by the evidence, plaintiff having testified that he looked in the direction of defendant before entering upon the intersection, whether or not his failure to see defendant constituted such negligence as would defeat plaintiff's recovery was a question of fact.

2. ———: ———. Upon approaching a highway intersection, it is the duty of the driver of an automobile to look to the right and left for approaching vehicles; whether or not he did his full duty in that regard may be a question of law, but is ordinarily one of fact for the jury upon consideration of all the evidence.

3. ———: DRIVERS OF AUTOMOBILES. A driver of an automobile should have his car under such reasonable control as will enable him to avoid collision with other vehicles, assuming that the drivers thereof will exercise due care.

4. Highways: RIGHT OF WAY AT INTERSECTION. The driver of an automobile, upon reaching an intersection, has the right of way over a vehicle approaching on his left, and may ordinarily proceed to cross; but if the situation is such as to indicate to the mind of an ordinarily prudent person in his position that to proceed would probably result in a collision, then he should exercise ordinary care to prevent accident, even to the extent of waiving his right.

5. Damages. When, at reasonable cost, a damaged automobile can be repaired and restored to substantially its original condition, such cost is a proper measure of damages in an action for negligence.

APPEAL from the district court for Lancaster county: JEFFERSON H. BROADY, JUDGE. *Affirmed.*

*Peterson & Devoe,* for appellant.

*C. M. Skiles* and *F. A. Peterson, contra.*

Heard before MORRISSEY, C. J., ROSE, GOOD, THOMPSON, and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.
This action grows out of a collision between an automo-

bile truck driven by the plaintiff and a Dodge touring car
driven by the defendant, at an intersection of graded coun-
try roads. From a verdict and judgment for plaintiff de-
fendant appeals.

For the purposes of the case the two roads may be con-
sidered of practically the same importance as highways.
They were hard and dry, the day was clear and bright, and
the collision took place about 9:30 in the morning. The
intersection was about level and the two roads upon which
the parties were traveling approached it on a slight decline,
described by the witnesses as an incline down. The plaintiff
testified that, as he approached the intersection from the
west, he was traveling about 12 miles an hour, and at a
point 8 or 10 rods west of the intersection he looked to the
south along the intersecting road for a distance of about
30 or 40 rods across the corner and saw no automobile ap-
proaching, indicating that some trees to the west of the
road may have prevented him from seeing defendant, and
that he did not see defendant until just at the instant of
the collision, which took place at a point about 10 or 12
feet east of the center of the intersection and a little south
thereof; that defendant passed across in front of him like
a streak; that the left front end of the truck caught the
left rear wheel of defendant's car as it was passing, pulling
and turning the truck to the northeast and upsetting it from
left to right near the culvert at the northeast corner of the
intersection, defendant's car continuing to the north, turn-
ing part way round and stopping in the ditch to the east
of the road. Plaintiff further testified that he did not look
again to the south, but while looking straight ahead could
have seen defendant some distance from the intersection.
Plaintiff and 7 or 8 disinterested witnesses testified that after
the accident the defendant stated that when he first saw the
plaintiff's truck defendant was going so fast that he could
not stop and he thought he would shoot through. Plaintiff's
truck was loaded with furniture about 12 feet high from the
bed and represented a total weight of about 7 tons, and was
provided with a cab containing glass and isinglass windows

through which plaintiff could observe the road to his right.

The defendant's version of the accident is as follows: That he was proceeding toward and entering the intersection from the south, going at about 15 to 16 miles an hour; that he first saw the truck when he was 50 or 60 yards south of the intersection, at which time the truck was 80 or 90 yards west thereof, going at about 15 to 18 miles an hour; that he proceeded north without slowing down and had just entered the intersection when he glanced up and saw the truck approaching at about 25 miles an hour, at which time he was going so fast he could not stop and swerved his car about 7 feet to the east, put on a little more speed and attempted to pass in front of the truck, but was caught substantially in the manner described by the plaintiff. Defendant, however, states that plaintiff was driving about a foot north of the center of the road and that the collision took place in the northeast corner of the intersection. Defendant further testified that he could see the truck all the way, but would not say that he watched it all the time. Defendant denied that he stated to the plaintiff's witnesses that he was going so fast toward the intersection that he could not stop, but insisted that if he said anything of that nature it was that after entering the intersection he was going so fast he could not stop. The parties were the only eye-witnesses of the occurrence, but a large number of persons congregated within a short time after the accident, and there is considerable testimony tending to support the various claims of the parties as to the relative positions of the cars upon the highway near the intersection, as evidenced by an examination of their tracks, some of defendant's witnesses placing the truck about a foot north and those of plaintiff south of the center of the road, while it is practically conceded that the defendant's car at a little distance south of the intersection was traveling to the left of the center, but entered the intersection about on the crown of the road.

Upon this record defendant strenuously insists that his motion for a directed verdict in his favor at the close of

the plaintiff's case, or a similar motion at the close of all the evidence, should have been sustained, and refusal of the district court to do so is assigned as error. The contention of defendant is that he had the right of way over the plaintiff, that it was the duty of the plaintiff to look in the direction of the defendant, that if he had done so at the proper time he would have seen the defendant in time to have slowed down and permitted the defendant to cross in front of plaintiff, and that plaintiff's failure to look or see defendant was more than slight negligence and therefore sufficient to prevent his recovery. Defendant requests the court to apply to automobiles approaching an intersection at right angles the same rule as applies to railway crossings, to wit, that it is the duty of a driver upon the highway approaching a railroad crossing to look and listen for trains at a point where he could see or hear a train approaching, and that his failure so to do is such negligence as prevents a recovery. *Haffke v. Missouri P. R. Corporation,* 110 Neb. 125. The situations are similar, but a moment's reflection will show that they are not identical for the obvious reasons that the engineer has no control over the route which he travels—the movement of the train is confined to the rails, while vehicles upon the highway have liberty of movement to a limited degree, but sufficient in many cases to spell the difference between safety and disaster; that in the open country railroad trains are propelled at a much higher rate of speed than are vehicles ordinarily; that the latter are more easily controlled, owing to lesser weight and momentum. Many other reasons might be mentioned. We have no doubt that cases may arise where it would be the duty of the court to rule, as a matter of law, that the failure of the driver of an automobile upon approaching an intersection to look in the direction from which other travelers upon the highway might be expected would amount to more than slight negligence and prevent a recovery, but we do not feel warranted in laying down a hard and fast rule governing all cases.

In the case at bar plaintiff testified that at a point 8 or

Thrapp v. Meyers.

10 rods west of the intersection he looked north and south, and that he could see when looking straight ahead for some distance to the right and left and did not see the defendant. Whether plaintiff should have looked at some other point or should have continued to look to the right the entire distance to the intersection, and whether his failure to do so, when taken in connection with the peculiar manner of the happening of the collision and the other circumstances, amounted to more than slight negligence, presents a question upon which reasonable minds might differ, and therefore was for the jury.

But when the testimony of the defendant also is considered there is not the slightest doubt that the evidence is sufficient to sustain the verdict. It appears according to his own statement that he saw the plaintiff at a point 80 or 90 yards west of the intersection and that he was in plain sight all the time, that defendant proceeded without slackening speed into the intersection, and then found himself going so fast that he could not stop in time to avoid a collision. It may be conceded that defendant, being upon the right of plaintiff, and the same distance from or closer to the intersection, and finally having first entered the intersection, had the right of way; but that fact alone did not warrant driving into the intersection at such speed that he was unable to control his car and prevent a collision, especially in view of the fact that he had seen plaintiff who remained in plain sight for over 150 feet. One having the right of way may not on that account proceed serenely unconscious of the surrounding circumstances; and if they are such as to forecast in the mind of a reasonably prudent person the probability of a collision should he continue on his way, it would be his duty to waive his right if reasonably necessary to avoid that event. The position of a driver of an automobile having the right of way is akin to that of the farmer who, when his horse ran away, trusted in the Lord until the breeching broke; the former may rely upon his right of way until he becomes aware of conditions which call for action upon his part; it then becomes his

duty for his own safety, and that of others, to avoid accident if reasonably possible. The following rules of the road at highway intersections seem well established:

(1) The driver must look and listen for the approach of other vehicles, at such point as they may be seen or heard. (2) He must have his car under such reasonable control as to avoid accidents which might have been foreseen by the exercise of ordinary care. (3) He has the right of way over traffic approaching on his left, but is not thereby relieved from the duty of exercising ordinary care to avoid accidents; therefore, if a situation is presented which, to an ordinarily prudent person in the position of the driver, would probably result in a collision if he exercised his technical right of way, it would be his duty to subordinate such right to the public safety. Under these rules, and conceding that plaintiff was negligent and defendant had the right of way, nevertheless it was a question for the jury whether or not defendant was guilty of negligence in entering the intersection at such speed that he was unable to stop or turn out, and whether such negligence was gross as compared with slight negligence on the part of plaintiff. See *Francis v. Lincoln Traction Co.*, 106 Neb. 243; *Traphagen v. Lincoln Traction Co.*, 110 Neb. 855.

We think the evidence as a whole, viewed as favorably to the defendant as the record warrants, presented questions for the jury, whether or not the plaintiff or defendant was guilty of negligence, and, if both, the comparison between them was for the jury. It was also a question for the jury whether or not the failure of the plaintiff to see the defendant, or the negligence of the defendant in driving upon the intersection at a rate of speed so great that he could not stop his car in time to avoid a collision, was the proximate cause of the accident. If evidence by plaintiff's witnesses of admissions by defendant that he was going so fast that he could not stop was believed by the jury, they might well conclude that defendant's negligence was the proximate cause. We think a verdict for either party would have been sustained by the evidence, and the jury having

found for the plaintiff we are not justified in disturbing their verdict.

Objection is made that the only evidence as to the amount of damages was the reasonable cost of repairing the truck and putting it in the same condition it was before the accident, it being contended that the only correct measure was the difference in the value of the truck immediately before and after the accident. The rule contended for has been announced in this state (*Reed v. Chicago, B. & Q. R. Co.,* 98 Neb. 19), but the other rule has also been recognized in cases where the article may, by repairing it, be put into substantially its original condition (*Layton v. Sarpy County,* 83 Neb. 628). In such case the difference in value before it was injured and after it was injured would be the amount that it would cost to repair and restore it to its former condition. *Overpeck v. Rapid City,* 14 S. Dak. 507. See, also, *McClure v. City of Broken Bow,* 81 Neb. 384; *Carruthers v. Campbell,* 195 Ia. 390. If the damage consisted merely of a broken fender, the cost of a new one installed would clearly compensate plaintiff for the injury. So here, it being shown that the truck could be repaired for $400 or $500, the rule adopted was correct. Moreover, defendant presented the same kind of evidence as to the damage to his touring car. The jury gave the plaintiff only $275.

Finding no error in the record, the judgment is

AFFIRMED.