ANTONIO MUÑIZ, Plaintiff and Appellee, v. AETNA CASUALTY & SURETY Co., Defendant and Appellant.

No. 4441.    Argued June 15, 1928.—Decided November 26, 1928.

*Hartzell, Kelley & Hartzell* and *R. O. Fernández* for the appellant. *Buenaventura Esteves* for the appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

This is an appeal from a judgment of the District Court of Aguadilla in an action for the performance of an insurance contract and for damages.

The opinion and judgment in the case were as follows:

"Facts, opinion and judgment.—Dr. Antonio Muñiz filed in this court a complaint in an action for the performance of contract and for damages against The Aetna Casualty & Surety Co.

"In opposition thereto the defendant filed a motion to strike which was sustained and this gave rise to an amended complaint which was

also opposed by a motion to strike that was overruled. To this amended complaint the defendant also filed a demurrer which was also sustained, whereupon the plaintiff, on the 7th of February of the current year, filed a second amended complaint which in its pertinent parts reads as follows:

" '1.—The plaintiff is of age, a physician practicing in Porto Rico and residing in San Sebastián, and the defendant is a foreign corporation engaged in the insurance business and working in this Island through authorized agents who reside in the city of San Juan.

" '2.—On April 4, 1925, the plaintiff and the defendant entered into an insurance contract on an Elcar touring automobile, plate No. 6030, belonging to the plaintiff, under the following conditions and stipulations: Liability for personal injury (limit, one person) $5,000; (limit, one accident) $10,000; liability for injury to another's property, limit $1,000; collision (damage to the automobile) fully covered. Pursuant thereto the defendant issued in favor of the plaintiff policy No. 3512970 which took effect at noon of April 4, 1926, official time in the locality of the risk.

" '3.—That on August 18, 1925, the plaintiff was traveling in the automobile which was being driven at that time by chauffeur José Quiñones, license No. 16214, en route to Aguadilla, and upon arriving at Km. 2, Hm. 2 of road No. 8, Aguadilla–Adjuntas section, a truck was traveling in the opposite direction and then the chauffeur of the plaintiff drove to the right in order to pass, but unfortunately the car skidded and went into a ditch on the right side of the road, colliding with a post at the side of the road and therefore suffered the following damages: tearing of the hood, breakage of the right rear mudguard, the right back wheel and disc bent, the metal plate of the right running board broken, the right side of the body dented and other minor damages.

" '4.—That the plaintiff notified the defendant of the accident on the day following its occurrence and took immediate action to have the insurance contract performed in the manner stipulated in the policy; but that the defendant began to raise obstacles and ended by refusing to comply with the said contract notwithstanding the fact that the plaintiff was always disposed to comply with his obligations.

" '*Second cause of action.*—The plaintiff repeats the foregoing allegations and for a second cause of action alleges:

" 'a.—That as a direct consequence of the collision the said automobile of the plaintiff was unfit for use during seven months, that is, until March 17, 1926, and during that time the plaintiff was compelled

to hire other vehicles for his professional requirements and for use in connection with the accident, having expended up to then the sum of $158.

" 'b.—That as he could not induce the defendant to repair the automobile which was greatly needed by the plaintiff, he decided in March of 1926 to have it repaired himself and spent in materials and labor the sum of $91.

" 'c.—That due to the inconsiderate attitude of the defendant the parties were unable to agree on the amount or value of the damages suffered by the automobile in the collision; and the plaintiff makes the special allegation that the said vehicle suffered a depreciation valued by the experts at $650 as a direct result of the said accident.

" 'Prayer.—By virtue of the foregoing allegations the plaintiff prays the Court to render at the proper time a judgment in the present case with the following pronouncements:

" '1.—Sustaining the first cause of action of this complaint and ordering the defendant to perform the insurance contract entered into with the plaintiff under the policy of the defendant No. 3512970;

" '2.—Sustaining the second cause of action of this complaint and ordering the defendant to pay to the plaintiff, as compensation for damages, the total amount of $899;

" '3.—Ordering the defendant to pay to the plaintiff all of the costs and disbursements in this suit, including attorney's fees, and making all other pronouncements pertinent in the premises.'

"In opposition to this complaint the defendant filed an answer denying each and every allegation contained therein and setting forth as new matter that after the occurrence of the accident the plaintiff and the defendant came to an agreement by virtue of which the damages suffered by the car mentioned in the complaint would be repaired by the defendant, but after having agreed the plaintiff refused to comply with the agreement, notwithstanding that the defendant had been always ready to make the repairs required by the said car, alleging that this agreement superseded the policy as to the said damages, and the plaintiff is only entitled to the performance of said agreement; that if the plaintiff was entitled to any claim based on the policy, such claim could only embrace the reasonable cost of repairs in accordance with the policy. Clause third.

"On the day set for the trial of the case the parties appeared by their counsel, the plaintiff being represented by attorney Buenaventura Esteves and the defendant company by attorney Rafael O. Fernández of Hartzell, Kelly & Hartzell; and the defendant moved for

the postponement of the trial because its witness Antonio Pavía Fernández had failed to appear.

"As authorized by section 202 of the Code of Civil Procedure the plaintiff allowed the production in evidence of the testimony of the absent witness as dictated by the attorney for the defendant company, but without admitting its truth, whereupon the court proceeded with the examination of the oral and documentary evidence of the plaintiff.

"The testimony of witness Antonio Pavía Fernández, who, as already stated, could not appear, was written out as follows:

"'That soon after the occurrence of the accident referred to in the complaint the plaintiff, Dr. Antonio Muñiz, while in San Juan, asked Mr. Pavía to accompany him to the office of D. R. Carrión Inc., agents of the defendant company; that together the witness and the plaintiff called at said office and there they had a conference with Mr. Porrata Doria, an official of the company, in regard to the damages suffered by the car; that in said conference the plaintiff made the admission that the damages suffered by his car were of small importance and that it had been agreed, after the matter had been discussed, that the plaintiff would send his car to San Juan to be repaired by the defendant company; that the plaintiff, after having come to this agreement with the defendant company, made objections to its performance and afterwards refused flatly to fulfill it; that the defendant, to Mr. Pavía's own knowledge, was and has always been ready to perform the aforesaid agreement between the defendant and the plaintiff and has always been ready to make the necessary repairs to the car of the plaintiff as a consequence of the damages suffered by reason of the accident involved in the present case.'

"Before proceeding further the court is of the opinion that the above testimony of itself, which was contradicted by that of the plaintiff, is not sufficient evidence to supersede or destroy the testimony of the plaintiff in regard to the existence of the agreement sought to be superseded by that testimony, because that consisted of the best evidence, i. e. the production of the original contract entered into by the parties.

"Now as to the question of facts, the court is of the opinion that the plaintiff has proved by his evidence each and every fact of his complaint; and as such evidence shows that the defendant acted rashly in this case, there is no doubt as to the right of the plaintiff to compensatory damages. The court, therefore, is of the opinion that the law and the facts are in favor of the plaintiff and against the defendant and sustains the complaint on both causes of action, adjudging that the defendant company pay the amount of the claim

less an item of $30 as wages of the chauffeur after the occurrence of the accident, which the court ordered to be stricken out at the proper time, reducing the amount of the claim to the sum of $839 after a further reduction to $128 of the item of $158 which appears in the complaint, imposing the costs on the defendant.''

The first assignment of error is as follows:

"1.—The District Court erred in not holding that the agreement for repairs proved by the defendant superseded the policy as to the damages resulting from the accident referred to in the complaint.''

From the wording of this assignment of error it appears clearly that it is based on a question of weighing the evidence, for it says, "the agreement for repairs proved by the defendant,'' and the argument refers to the testimony of witness Antonio Pavía and the weight given to it by the district court. It seemed most logical that the error should have been assigned as in weighing the evidence and the legal consequence would have been extracted as to what may be termed a novation of the insurance contract, as the substitution of the new for the old contract would amount to that.

The trial court was not convinced by the testimony of Antonio Pavía, but rather by that of the plaintiff who can not be challenged as a witness, because the presumption that he is telling the truth is in his favor and that presumption has not been destroyed. The written testimony, as compared with the oral testimony before the trial judge, has to its disadvantage the coldness of written matter and the absence of the elements of manner and natural emotion which are inseparable from testimony expressed in words before the one who has to weigh and appraise it. In this case the plaintiff went before the judge who saw and heard him and could penetrate the spirit of his testimony by the aid of his senses. The judge believed this testimony rather than that written or agreed to from Pavía, which he declared to be insufficient evidence.

The appellant alleges that the court was mistaken because

it was not the proof of the insurance contract that was involved, in respect to which the policy was the best evidence. He then cites the case of *Gerena* v. *Suau*, 36 P.R.R. 151. But it should be remembered that the plaintiff permitted witness Pavía to testify as appears from the record, without admitting the truth of the facts apparently testified to by him, and confronted that testimony with his own testimony and an insurance policy which does not appear to have been canceled and whose cancellation has not been alleged or proved in any way.

Likewise, it is well to establish the real doctrine of this court in *Gerena* v. *Suau*. The testimony of Bartolo Suau, as said by this court, merits "a certain amount of consideration." This does not mean that that testimony was incontrovertible. So much so that that opinion immediately safeguards the right of the other party by saying:

"His statements may be impugned as mistaken, but his credibility can not be attacked in the manner of other witnesses."

And it had been said before in the same opinion in referring to this testimony that—

"While the court has a perfect right to disregard this statement of Bartolo Suau, if convinced by other evidence that the facts to which he deposes were otherwise than he states them, . . . ."

Thus the right of trial courts to weigh and attach credibility to the evidence is safeguarded and that right is recognized by the appellate courts, without prejudice to the correction of any manifest errors that may have been committed.

There appeared in the present case a conflict of evidence which the court adjusted in favor of the evidence submitted by one of the parties, and there is nothing to indicate that in so ruling the court erred or was influenced by partiality, passion or prejudice.

An examination of the testimony of Antonio Pavía shows that the plaintiff went with him to the office of the defendant

and admitted that the damages suffered by his car were of small importance and agreed to send his car to San Juan to be repaired by the defendant, but he did not send the car and refused to send it, and that the defendant has been and is disposed to comply with this agreement and make the repairs. It is really difficult to separate here what the witness may have said of his own knowledge from what he stated from hearsay, and even from what he could not say under the rules of evidence. But it is necessary to remember that, apart from the conclusive presumptions, there is no evidence whatever obliging a court to decide in a certain sense. Sapient as is the Law of Evidence, its precepts are not an iron hand which grips the conscience of the trier, but rules that above all else should be applied to current logic to the realities of life. Thus, it is established by section 4 of that law that the judge does not require such a degree of proof as would exclude all possibility of error, but only moral certainty or that degree of proof which produces conviction in an unprejudiced mind. This is in harmony with the provisions of section 162 which reads as follows:

"The effect of evidence is not arbitrary, but to be exercised with legal discretion, and in subordination to the rules of evidence."

The District Court of Aguadilla was confronted by the contradictory testimony of Pavía and that of the plaintiff, with the circumstance that the latter, on direct and indirect examination, explained logically and reasonably his attitude in the case and the difficulty of transferring his automobile to San Juan. It was confronted by the existence of the insurance policy and no effort was made to prove that the policy, the body and soul of the contract, had been canceled, as seems to be the inevitable consequence of the interposition of another subsequent contract. Finally, it saw in the policy that the insurance company, from the date of the signing of the contract, had been under the obligation to make any repairs necessary. But even admitting as true the testimony

of Pavía, the obligation to make the repairs would be the same as stated in the policy and not a new one. We can not assent to the theory that there was a novation in this case; and even if the testimony of Pavía had been considered true by the court, it would involve no more than a form of compliance with the obligation and not a novation. The existence of the novation claimed would require, under section 1171 of the Civil Code, a change of the object or principal conditions of the obligation, a substitution of the person of the debtor, or subrogation of a third person to the rights of the creditor. And always either the express declaration that the original obligation was extinguished, or absolute incompatibility between the two. There is nothing of this in the case; neither an express declaration of novation, nor absolute incompatibility between the obligation in the policy and the one claimed to have arisen later.

If there was contradiction and conflict in the evidence, the court adjusted it properly. And if the question is one of law referring to the novation, this never existed in the case according to all of the evidence.

The second assignment of error should be studied jointly with those under numbers 4, 5 and 6. They all refer to the kind of damage, its proof and amount.

These assignments appear in the brief as follows:

"2.—The district court erred in not holding that if the plaintiff had any right based on the policy, the claim could include only the reasonable cost of the repairs.

"3.—The district court erred in allowing Francisco Julia, Ramón A. Cancio and Mamerto Molinary, witnesses for the plaintiff, to testify about the value of the automobile without being qualified.

"4.—The district court erred in allowing the item of $650 claimed for depreciation of the automobile of the plaintiff.

"5.—The district court erred in allowing the plaintiff the cost of the repairs and also the alleged difference between the value of the car before and after the accident.

"6.—The district court erred in allowing the plaintiff the sum of $128 for hiring other vehicles."

The position taken by the appellant is very queer. In the first assignment of error it insists that there was a novation of the contract by virtue of which the plaintiff could not invoke the obligations and stipulations which appear in the policy, and in the assignments under consideration it admits as a rule of the case the obligations originating from the policy. It is obvious that every possibility should be covered; but there is evident incompatibility between the two theories.

In order to decide on these points as submitted it is necessary to bear in mind the stipulations and facts stated in the insurance policy, which is a part of the evidence. According to that policy the insurance company is liable to the insured for "the loss of or direct damage to the automobile described caused only by accidental collision with another automobile, excluding, however: (a) damages caused by the fall or overturning of the automobile described unless such fall or overturning be the direct result of the accidental collision and occurs immediately thereafter; (b) damages or destruction caused directly or indirectly by fire; (c) damage to the tires, if the automobile is not otherwise damaged."

It is beyond discussion that the cost of repairing the automobile should be paid by the defendant. It should have had the car repaired as soon as it reasonably could do so after being notified of the accident.

But as regards the amount for depreciation of the automobile, it is necessary to go a little deeper in that respect.

On page 7 of its brief the appellant cited some authority which it is well to reproduce:

"The usual rule for damages is the difference in the reasonable market value of the automobile immediately before and immediately after the accident in negligence cases, and when this rule is applied the cost of repairs cannot be included; provided, however, if the injury be capable of repair at an expense less than the diminution in value of the property as injured, the damage is limited to the cost of such repair." Babbit on Motor Vehicles, 3rd Ed., p. 1410.

"Measure of damages for injury to personalty is diminution in value unless repairs will cost less.

"Where personal property, as an automobile or motor truck, has been negligently injured, but is susceptible of repairs, the measure of the owner's damage is the difference in value immediately before and immediately after the injury, subject to the proviso that, if it can be entirely repaired at a less expense than the diminution in value because of the injury, the measure of damages is the reasonable cost of repairs." *Rhodes* v. *Firestone & Rubber Co.*, 197 Pac. 392.

And the following on page 8:

"Under Civil Code sec. 3333, relating to breach of an obligation not arising from contract, the measure of damages for injuries to personal property, in the absence of its total destruction, is the difference in its value immediately before and after the injury, provided that, if it be capable of repair at an expense less than its diminution in value, the recoverable damage is limited to the cost of repairs." *Kincaid* v. *Dunn*, 148 Pac. 235.

The appellee also cites several authorities, among them the case of *Broadie* v. *Randall* of Kansas, appearing in vol. 32 A.L.R. p. 709. It is well to bear in mind that this decision refers to a case in which defendant Bentley Randall wrote with his finger on a dusty automobile the word "Bentley," scratching the paint and varnish.

It seems that the best theory and that resting on most solid ground is that when the complete destruction of the property is not alleged and proved and the property can be repaired, the best measure of damage is the cost of its restoration and the value of the use of the property while the repairs are being made. This is the doctrine upheld in several jurisdictions and in the case of *Broadie* v. *Randall, supra*, cited by the appellant. We quote from it:

"Where personal property has been injured by negligence of another and can be repaired, the proper measure of damages is the cost of repairs and the value of the loss of the use of it while being repaired. If it cannot be repaired, then the measure of damages would be the difference between the market value of the property before the injury and the value of the wreckage.

"Crossen v. Chicago & J. Electric R. Co., 158 Ill. App. 42; Weleetka Light & Water Co. v. Northrop, 42 Okla. 561; 140 Pac. 1140; Layton v. Sarpy County, 83 Neb. 628, 120 N. W. 179; McClure v. Broken Bow, 81 Neb. 384, 115 N. W. 1081; Kincaid v. Dunn, 26 Cal. App. 686, 148 Pac. 235; Beabody v. Lynch, 184 Ill. App. 78; Armstrong v. May, 55 Okla. 539, 155 Pac. 238; Watson v. Mississippi River Power Co., 174 Iowa, 23 L.R.A. 1916D, 101, 156 N.W. 188, 13 N. C. C. A. 873; Adam v. Chicago, B. & Q. R. Co., 139 Mo. App. 204, 122 S.W. 1136; McGuire v. Post Falls Lumber & Mfg. Co., 23 Iowa 608, 131 Pac. 654; Kerns v. Kansas City, 79 Kan. 562, 100 Pac. 624; Thomas v. Warrenburg, 92 Kan. 579, 141 Pac. 255."

The legal doctrine in this jurisdiction has been indicated at least in *Molina* v. *Porto Rican Lloyd's*, 31 P.R.R. 120, from which we quote the following:

"Let us consider now the first pronouncement of the judgment, that is, whether or not complete repairs were made. We do not agree with the absolute statement made by the trial judge in his opinion to the effect that it is always necessary to substitute new parts for the damaged parts. If instead of saying damaged parts he had said broken parts, or parts damaged so that it would be impossible to restore them to their original condition, it would be different. And in fact this last is what the evidence showed to have occurred in this case. Hence, the error assigned was harmless. Not only the evidence of the plaintiff, but also the evidence of the defendant, showed that at least as regards the chassis, the repairs were not complete.

"According to the jurisprudence cited by the appellant, to repair means to restore to its original condition, and a broken chassis is not completely repaired, that is, restored to its original condition, by making an interior reinforcement by means of rivets, as was done in this case.

"Let us examine the second pronouncement. In cases of this kind when the insurance company fulfills well and promptly its obligation to repair the car, generally there will be no damages for being deprived of the use of the car while it is being repaired. But when the company delays the performance of its obligation; when the repairs are not complete, and when for other causes chargeable to it the owner is prevented from deriving the positive benefit that he usually derived from the use of his car, it is clear that damages are recoverable. The district court estimated the damages in this case at $400. We have reviewed the evidence and find a basis for allowing only the sum of $116."

The legal doctrine of this case was cited in *Martínez* v. *Independence Indemnity Co.*, 36 P.R.R. 775.

We do not find from an examination of the complaint in this case an allegation of the total destruction of the automobile. Certain damages are alleged as a direct consequence of the collision and it appears from the allegations and the evidence that those damages were repaired, without any indication that the automobile was not put in good condition; but, on the contrary, it was proved that the plaintiff ordered and paid for the repairs and accepted the automobile after it had been repaired, the logical presumption being that the automobile remained in good condition.

But it is true also that the defendant, as appears from the evidence and the opinion of the trial court in rendering judgment, did not proceed, as it should have done according to the natural consequences of its insurance contract, to make the repairs. If it had the defendant would not have been deprived of the use of his automobile for a considerable length of time. By virtue of the contract the parties thereto were bound, according to section 1225 of our Civil Code, ". . . . not only with regard to the fulfillment of what has been expressly stipulated, but also with regard to all the consequences which, according to their character, are in accordance with good faith, use, and law."

A party to a contract is not authorized by good faith, or use, or law, to delay and defer for a long time the fulfillment of his obligations. The party so acting falls under the sanction of the provisions of sections 1069, 1070, 1071 and 1073 of the Civil Code, which read as follows:

"Sec. 1069. Liability arising from fraud is demandable in all obligations. The renunciation of the action to enforce it is void.

"Sec. 1070. Liability arising from negligence is also demandable in the fulfillment of all kinds of obligations; but it may be mitigated by the court, according to the case.

"Sec. 1071. The fault or negligence of the debtor consists of the omission of the steps which may be required by the character of the

obligation, and which may pertain to the circumstances of the persons, time, and place.

"Should the obligation not state what conduct is to be observed in its fulfillment, that observed by a good father of a family shall be required.

"Sec. 1073. Indemnity for losses and damages includes not only the amount of the loss which may have been suffered, but also that of the profit which the creditor may have failed to realize, reserving the provisions contained in the following sections."

Therefore, the judgment contains no error as regards the allowance of $128 referred to in the 6th assignment, although we recognize that the court erred in adjudging that the defendant pay the sum of $650 for depreciation in value of the damaged automobile.

Therefore, the errors assigned by the appellant under numbers 2 and 6 were not shown, but those under numbers 4 and 5 do exist because proof of that item is unnecessary.

As to the admission of the testimony of Francisco Julia, Ramón A. Cancio and Mamerto Molinari (error assigned under number 3 by the appellant), we do not find that the court committed error. They seemed to be sufficiently qualified to testify on the matter submitted to them. It is not permissible to convert the rules of evidence, by an exaggerated technicality, into an obstacle against discovery of the truth.

The imposition of costs depends largely on the sound discretion of the court and in a case of this nature in which was shown the undue refusal of the defendant to comply with the obligations imposed upon it by the contract, the imposition of costs is not only discreet and just, but salutary and exemplary. Therefore, the assignment made under number 7 is without merit.

The judgment appealed from should be affirmed in so far as it adjudges that the defendant pay to the plaintiff the amount expended in repairing his automobile, the sum of

$128 as indemnity, and the costs, and reversed as to the other pronouncements.