MARTIN COSTELLO, ADMINISTRATOR OF THE ESTATE OF
MAURICE COSTELLO, DECEASED, APPELLANT, V. OSCAR
HILD, APPELLEE.

40 N. W. 2d 228

Filed December 12, 1949.   No. 32662.

(1)

*William L. Walker, Leonard Dunker,* and *Earl Ludlam,* for appellant.

*Gross & Welch, Harold W. Kauffman, James M. Lanigan,* and *John F. McCarthy,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action brought by the plaintiff as administrator of the estate of his son Maurice who was killed in an intersection collision of an automobile with a truck driven and owned by defendant. Plaintiff's intestate was a guest in a car driven by Richard Welch. Issues were made and trial was had to a jury, resulting in a verdict for defendant. Plaintiff appeals. We reverse the judgment of the district court.

Plaintiff alleged negligence of the defendant in that he was driving at a high and unlawful rate of speed; that defendant, after the Welch car had entered the intersection and was proceeding across the same, drove into the intersection and against the Welch car, striking it and overturning it, and killing plaintiff's intestate; that defendant failed to keep a proper lookout for traffic as he approached the intersection; that he failed to slow down or apply his brakes; that he drove into the intersection in complete disregard of the safety of the occupants of the Welch car; and that he failed to keep a proper control of his automobile.

Defendant for answer admitted the occurrence of the accident, denied generally, and alleged that the accident was due solely to the negligence of Richard Welch which was imputed to the deceased, and to the contributory negligence of the deceased.

Plaintiff assigns here error of the court in submitting issues of contributory negligence and comparative negligence to the jury, in admitting in evidence a written statement given by Welch after the accident, in admitting

pictures of defendant's truck in evidence, and in permitting the jury to inspect the defendant's truck and the frame of the Welch car.

Defendant made a motion for a directed verdict at the close of plaintiff's case-in-chief and again at the close of all the evidence.

Initially we are presented with the contention of the defendant that the judgment must be affirmed in any event for the reason that there is no evidence of negligence on the part of the defendant, and that the trial court erred in overruling the motions for a directed verdict.

Accordingly we state the evidence as it goes to the question of defendant's negligence.

The plaintiff offered evidence from which the jury could have found these facts.

The accident happened January 29, 1945, about 8:30 a. m. Deceased, then 15 years of age, was riding as a guest in a 1929 Model A four-door sedan on the right-hand side of the front seat. Two other boys were riding in the rear seat. The car was driven by a boy 18 years of age, named Richard Welch. He had been driving for three years and had been driving to school along this road since the preceding September. The weather was cold and cloudy, and the wind was from the northwest. The windows were not frosted over. The car had a heater that was operating. On the morning of the accident the engine of the Welch car blew a gasket so that it was operating on three cylinders and causing a jerky movement of the car.

The roads involved were country roads, not graveled, and with one main track of travel. There is no evidence that either road was protected by stop signs.

Welch started east along the road and picked up the deceased and a brother at a point about half a mile west of the intersection. They proceeded east and picked up another boy about 40 rods west of the intersection. The Welch car was shifted into high gear just before it

reached the intersection. Its speed was not to exceed 20 miles an hour at the time it approached and entered the intersection.

From the point where the last boy entered the car, vision to the south was obstructed by standing corn. At a point where a car would begin to turn to the south and before entering the intersection, there was a clear view to the south for a distance not disclosed by plaintiff's evidence. Welch looked to the north and then to the south when he was not quite in the intersection. He saw nothing. He proceeded into the intersection where his car was struck by the truck driven by defendant. Welch saw defendant's truck for the first time just as it hit. Welch was driving on the right-hand side of the road. The front end of his car was across the middle of the intersection at the time of the contact. Welch's car did not travel very far. It turned over and came to rest in the southeast quadrant of the intersection on its right side facing southwest. The right front fender was smashed in, the right headlight was knocked off, the transmission was broken, and both sides of the frame were bent in to the left a distance of a foot or more.

The defendant's truck came from the south, and after the contact traveled up the road north a distance of 80 feet, and came to rest on its left side, headed southwest. A passenger in defendant's truck testified that as defendant approached the intersection he did not slacken his speed nor sound his horn.

On a motion of defendant for a directed verdict at the close of plaintiff's case, the trial court held that there was sufficient evidence to take the question to the jury as to whether or not the Welch car entered the intersection first and had the right-of-way.

Defendant's evidence is summarized as follows. The evidence as to the roads is about the same as that of the plaintiff. The weather was clear. Defendant's windshield was clear. Defendant was a star route mail carrier from Grand Island to Greeley and had been driving this

road for some time. The time of the accident was about 8:45 a. m. Defendant was about on schedule. The schedule required him to drive 25 to 35 miles an hour. The road as he approached the intersection was smooth and defendant was driving at his usual speed there of 20 miles an hour. He gave no reason for reduced speed at that place. He was driving in about the center of the road. There was a bridge about 30 rods south of the intersection. After defendant crossed this bridge he could see 80 rods to the west, and he looked but saw no car coming. At another point he stated that from the middle of the road he could see 200 feet west, and that he looked but saw nothing, although the record is not clear where he was at that time. Defendant testified that after crossing the bridge he was watching to the east because of trees and weeds along the highway and a bridge just east of the intersection; that when he came to the intersection he looked to the east, the north and east, *but not to the north and west;* and that he first saw the Welch car "through the side of my eye" just the instant before the collision. He did not turn the truck either way. In answer to a general question defendant said there was nothing to obstruct his view of the Welch car. His evidence is that his car did not go quite as far north as the plaintiff's witnesses fixed the distance. Defendant's evidence also is that the left rear fender of his car was pushed in and the running board was damaged, and that there was no damage to the front end of his car.

It is defendant's contention that he had the right-of-way under the provisions of section 39-728, R. S. 1943, which is as follows: "Motor vehicles traveling upon public highways shall give the right of way to vehicles approaching along intersecting highways from the right, and shall have the right of way over those approaching from the left when said vehicles shall reach the intersection at approximately the same time. In all other cases the vehicle reaching the intersection first shall have the right of way."

Defendant was approaching from the right. However, when the plaintiff rested his case there was no evidence as to the location of the defendant's truck when the car in which plaintiff's decedent was riding entered the intersection. Plaintiff's witnesses testified that he looked to the right or south and did not see defendant's truck. The evidence of the plaintiff clearly justified an inference that defendant's truck was not then proximately near the intersection when the Welch car entered it and that accordingly the Welch car had the right-of-way. As we said in Whitaker v. Keogh, 144 Neb. 790, 14 N. W. 2d 596, before a verdict can be properly directed in such a case the position of the defendant's car must be definitely located in a favored position, otherwise the question becomes one for the jury.

In a substantially similar set of facts so far as plaintiff's evidence is concerned, and subject to an attack that a motion for a directed verdict should have been sustained at the close of plaintiff's case, we held in Thrapp v. Meyers, 114 Neb. 689, 209 N. W. 238, 47 A. L. R. 585, that the question of defendant's negligence was for the jury to determine. See, also, Meyer v. Platte Valley Construction Co., 147 Neb. 860, 25 N. W. 2d 412.

The case of Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673, relied upon by defendant, is not controlling here for that case begins with the premise that there was no question but that defendant was entitled to the right-of-way at the intersection. Likewise, defendant relies upon Meyer v. Hartford Bros. Gravel Co., 144 Neb. 808, 14 N. W. 2d 660. There the plaintiff's evidence showed that the defendant's truck entered the intersection before plaintiff's car, and the opinion is based on the premise that defendant had the right-of-way.

Defendant's own testimony, recited hereinbefore, shows that he approached and entered the intersection and proceeded north therein without looking to the left.

As we said in Thrapp v. Meyers, *supra,* he proceeded "serenely unconscious" of the closely approaching Welch

car, a serenity caused by his admitted failure to look to the left. The rule is: "Upon approaching a highway intersection, it is the duty of the driver of an automobile to look to the right and left for approaching vehicles; whether or not he did his full duty in that regard may, in some cases, be a question of law where undisputed evidence or physical facts and circumstances control, but otherwise it is ordinarily one of fact for the jury upon consideration of all the evidence." Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175. Defendant had a duty to see what was in plain sight. Kraft v. Wert, 150 Neb. 719, 35 N. W. 2d 786. The defendant's own evidence presents at least a jury question as to his negligence.

We find no merit in defendant's contention that he is entitled to prevail in any event.

We go now to the question of whether or not the trial court erred in the admission in evidence of exhibit 1. It appears that two days after the accident Welch was interviewed by an investigator. He signed a long typewritten statement which contained statements as to when and where the accident happened, his ownership of the car, the name of the person from whom he purchased it, the fact that he did not have a license on it, the names and residence of his parents in Chicago, the unemployment of his father, the condition of the weather and roads, and where he picked up the other boys in the car. Further it appears from the statement that Welch had shifted the car into high gear before he reached the intersection; that the windshield of his car was clear, but he did not remember whether the windows were clear or frosted; that he looked as he approached the intersection but did not see any car coming from the south; that the two cars stopped on their sides; that he thought his stopped in the center of the intersection; that his speed was 15 to 20 miles an hour; that he did not apply his brakes; that defendant, after the accident, said he had not seen him; that he could not say how fast the defendant was driving as he had not seen him; that a lot of damage was done to

his car; that he received personal injuries; and that he did not examine the defendant's car to determine whether or not the windshield or windows were frosted. The statement concluded, "I HAVE READ MY STATEMENT ON THIS PAGE AND IT IS TRUE AND CORRECT."

Midway in the writing is this statement: "As we approached the i tersection (sic) I asked Maurice if there were a y (sic) cars coming and he said that there were no cars coming. His words were "There isn't no car coming"., and at the time he said it he was looking to his right or to the south as we approached the intersection."

On cross-examination of Welch the following questions were asked and the following answers made. "Q. Did you say anything to any of the boys in the car with respect to looking out for other cars coming to the intersection? A. Well, not as I know of. I don't remember saying that. I don't think I did, because I don't make a habit of doing it. Q. Dick, I am going to ask you if somebody called on you after the accident and you gave a statement, a written statement and signed it? A. Yes; as I remember it and he did most of the answers too. Q. You don't recall in that statement you said you asked Maurice Costello, who was riding with you in the front seat, to look and see if anybody was coming up the road and that you stated that Maurice answered you and said, No, there was no car in sight; do you recall that? A. When he come up there he told me that Jimmy Keaton had said that. Q. Who told you? A. The man that was doing the questioning. Q. If that appeared in the statement that you made to him, do you think that was a correct statement? A. Well, no, I don't think I said that. Q. Well, if it appeared in that statement under your signature, do you think that was correct? MR. CUNNINGHAM: Well, now we will object to this as assuming something not in evidence; improper cross examination; not relating to impeachment. THE COURT: Sustained." Later, on his cross-examination, the following questions were asked

and the following answers made. "Q. Handing you defendant's Exhibit '1', I will ask you to state if you ever saw that instrument before? A. That is my signature. Q. That is your signature. And do you remember the occasion of having signed that? A. Yes. Q. And that bears date of February 1, 1945. That was a couple of days after the accident took place, is that ·true? * * * A. Yes. Q. And a gentleman called on you and he wrote this statement and you signed it, and the last part of it, 'I have read my statement on this—MR. CUNNINGHAM: We will object to this as improper cross examination. THE COURT: It is sustained." Near the close of defendant's case-in-chief and before resting, defendant· recalled Welch for additional cross-examination. He was asked if he had not previously identified exhibit 1 as a statement he had signed and if it was not the same statement that he had signed, and he answered, "Yes; I guess so." The part of the statement last above quoted was read to him and he was asked if he had not made that statement at that time and he answered, "That's what the man said." He then was asked and answered these questions. "Q. Well, did you tell the man that when he wrote this statement? A. I said 'I don't know.' * * * Q. And you don't recall of making that statement at that time? A. No. Q. But you signed it? A. Yes; but I never read it. Q. Was it read to you? A. No, because Dick called for me to hurry up and help get the car ready." The exhibit was offered in evidence as a statement made by Welch "just a few· days after this accident occurred." Plaintiff's attorney then asked: "Q. You say that was the man's statement that wrote this up? A. Yes." Objection was made to the exhibit as incompetent and no sufficient foundation laid. The exhibit was received in evidence and read to the jury.

Under similar circumstances in Moore v. Krejci, 139 Neb. 562, 297 N. W. 913, we held that "A written statement, purportedly given by the plaintiff to an action and offered for the purpose of impeachment, is not admissible

in evidence without a proper foundation. * * * Ordinarily, the proper foundation for the admission of such a statement must be made by calling the person who procured the statement and establishing by him that it was correctly typed or correctly read to or by the plaintiff and contains the statements made by the plaintiff." Likewise, in Gorman v. Bratka, 140 Neb. 575, 300 N. W. 807, we held: "If a party to a suit makes a written statement which is prepared by a third person, where the party denies the authenticity and correctness of the instrument, the party preparing the instrument, or some one cognizant with the facts, should be called to lay a proper foundation for its admission in evidence."

The above cases deal with the attempted impeachment of parties to the suit. The rule is likewise applicable to the attempted impeachment of a witness not a party to the suit. Here, as in the Moore case, there is no showing of an attempt to call the person who prepared the statement nor does the record show any explanation or reason for failure to do so. No reason appears to prevent the application of the general rule.

Accordingly, it is held that the trial court erred in the admission of the exhibit. That its admission was prejudicial is shown by defendant's argument here. Defendant argues that the jury might determine that the statement in exhibit 1 impeached the sworn statement of Welch on the witness stand; that the jury might then conclude that the conversation actually took place; and that if it did, it was positive evidence of contributory negligence on the part of the decedent. Such reasoning results in a conclusion contrary to the rule that "A witness may be impeached by showing that he made statements out of court contrary to those made in court in regard to some matters relevant to the issue. * * * Such declarations are not substantive evidence of the fact declared, unless made against interest by one who is a party to the record. * * * Such declarations are received to aid the court or the jury in estimating the

character and credibility of the witness." Zimmerman v. Kearney County Bank, 59 Neb. 23, 80 N. W. 54. See, also, Sindelar v. Hord Grain Co., 116 Neb. 776, 219 N. W. 145; Carpenter v. Sun Indemnity Co., 138 Neb. 552, 293 N. W. 400. As we said in Bernhardt v. Chicago, B. & Q. R. R. Co., 132 Neb. 346, 272 N. W. 209, the law will not permit one to bolster up a weak case by supplying the elements of negligence through impeachment of a witness not a party to the case.

It follows from the above rules that in determining whether or not there was evidence of contributory negligence of deceased sufficient to submit that issue to the jury the court could not properly consider the statement made in exhibit 1. The exhibit was not competent evidence for that purpose in any event. The question then is, was there evidence otherwise of decedent's contributory negligence?

Defendant contends that the facts and circumstances authorized the submission of the issue to the jury. Defendant argues that deceased knew the road, the intersection, and the obstruction to view caused by the cornfield; that he sat in the most advantageous position to look for and observe intersecting traffic; and that the presence of the obstruction to the view required special care. Defendant argues also that deceased did not observe the approach of defendant's truck which must have been in plain sight; that he made no effective observation of traffic conditions at the intersection; that he did not warn of the approach of defendant's truck; and that deceased should have warned Welch to reduce his speed and did not warn or protest.

In Gleason v. Baack, 137 Neb. 272, 289 N. W. 349, we stated the applicable rule as follows: "The duty of a guest riding in an automobile is to use care in keeping a lookout commensurate with that of an ordinarily prudent person under like circumstances. The guest is not required to use the same degree of care as devolves upon the driver. If the guest perceives danger,

or if at certain times and places should anticipate danger, he should warn the driver. Ordinarily, the guest need not watch the road or advise the driver in the management of the car. * * *." Also, in Fulcher v. Ike, 142 Neb. 418, 6 N. W. 2d 610, we held: "* * * it is the duty of an invited guest in an automobile driven by another, with knowledge of approaching danger, to exercise ordinary care to warn the driver of the danger, unless to a reasonably careful, cautious and prudent person it appears that the warning would be of no avail or go unheeded, or that the driver observed or should have observed the danger, as well as the guest, and for failure to give such warning the guest would be chargeable with contributory negligence. Also, it is the duty of an invited guest, with knowledge of approaching danger, in the exercise of ordinary care to protest to the host if there is time and opportunity, unless it reasonably appears that such protest would go unheeded or would be of no avail, and for failure so to do the guest would be chargeable with contributory negligence." See, also, Hamblen v. Steckley, 148 Neb. 283, 27 N. W. 2d 178.

Weighed by these rules we see no basis in the evidence for a holding that the deceased was guilty of contributory negligence. Defendant makes certain contentions, above outlined, as to what deceased did not do and should have done. The difficulty there is that no evidence is cited to us and we find none to support those contentions.

We said in Hendren v. Hill, 131 Neb. 163, 267 N. W. 340, that "Even if it is conceded that it was the plaintiff's duty to watch the road and warn the driver, there is no evidence that she did not perform this duty. Neither the plaintiff nor the defendant was able to give any account of what preceded the accident. The burden is upon the defendant to prove the contributory negligence of the plaintiff. She is entitled, in the absence of evidence to the contrary, to a presumption of due care." That statement answers the contentions here made, the

rule being that if contributory negligence is relied on by defendant as an affirmative defense, the burden is upon him to prove it by a preponderance of the evidence, except insofar as it may appear in the plaintiff's evidence. Plumb v. Burnham, 151 Neb. 129, 36 N. W. 2d 612.

There was no evidence of the contributory negligence of the deceased. The rule is: "Where there is no evidence to support the defense of contributory negligence it should not be submitted to a jury and to do so is prejudicial error requiring the granting of a new trial." Remmenga v. Selk, 150 Neb. 401, 34 N. W. 2d 757.

Plaintiff contends that there was error in the admission in evidence of three pictures of defendant's truck. These pictures were taken two days after the accident and after the truck had been removed from the scene of the accident. Witnesses on direct and cross-examination described the damage caused by the accident as portrayed by the pictures and the changes that had been made in it between the time of the accident and the taking of the pictures. The pictures tell the story visually as it was told by the witnesses. The offer was a joint offer of the three pictures as three exhibits. After cross-examination plaintiff stated that he objected to one exhibit and named two. The objection was that the truck was not in the same condition as it was after the accident. The trial court ruled that the difference had been explained to the jury and admitted the exhibits. We see no prejudicial error in their admission.

It appears that after the accident the Welch car was dismantled and only the frame remained. The defendant's truck was repaired. Both frame and truck were at the courthouse when the case was tried.

At the close of plaintiff's case-in-chief plaintiff requested that the jury be permitted to see the frame of the Welch car. Defendant objected. Plaintiff later offered evidence that it was in the same condition as it was following the accident.

Defendant requested that the jury view the truck.

No objection was made. Later the court permitted the jury to view both the frame and the truck. No objection was made when that was done nor to the manner of doing it. Plaintiff now claims it was error. We see no merit in the contention.

The judgment of the trial court is reversed and the cause remanded.

REVERSED AND REMANDED.