## BROWN-RANDOLPH COMPANY *v.* GUDE *et al.*

1. A building contract, to be valid, must have the necessary element of certainty, just as other contracts. Such a contract may be made sufficiently certain by reference to other documents, or to plans and specifications. But such reference must be sufficient to identify the documents or plans to which reference is made.
2. Where a building contract provided for the construction of a building upon a consideration of "actual cost plus a commission of ten per cent.," and "the estimates of the contractors made in writing from completed drawings and specifications and full information will be correct to the extent that the cost will not exceed the estimate more than five per cent.;" and where, before the above contract was executed, a letter was written by a contractor to an architect, in which the contractor gave an estimate of the cost of the building, much lower than it was built for, but the letter was not made a part of the executed contract, nor was it expressly referred to therein, such letter cannot serve as a basis in determining the rights of the owner of the building, in a suit seeking recovery against the contractor, who, it is alleged, was overpaid on the basis of the estimate contained in the letter. The contract did not identify the letter, so as to make it a basis of recovery.
3. The petition did not set forth a cause of action, and the court did not err in dismissing it on demurrer.

No. 2032. January 13, 1921. Adhered to on rehearing, March 5, 1921.

Equitable petition. Before Judge Bell. Fulton superior court. April 12, 1920.

Brown-Randolph Company brought its petition in Fulton superior court against A. V. Gude Sr., A. V. Gude Jr., Trust Company of Georgia, and A. Ten Eyck Brown, alleging in substance as follows: On July 30, 1917, petitioner determined to erect an eight-story building on its property at the southwest corner of Marietta and Forsyth streets in the City of Atlanta, Georgia, employing Brown as architect and the Gudes (then partners under the name of Gude & Company) as contractor. The contractor, in a letter to the architect on June 28, 1917, stated that the building would cost $375,000, including the commissions of Gude & Company. Following said estimate on July 30, 1917, petitioner entered into a written contract with the contractor, relative to the construction of said building. Under the terms of the contract the building was to be erected com-

plete in every detail and delivered to petitioner, free of all liens, at and for the sum of not to exceed $375,000, to which sum was to be added the ten per cent. profit to the contractor called for by said contract, and the commissions of the architect, and to be completed in ten months after the contractor was furnished with the possession of the property and the completed plans and specifications. Possession of the property was given immediately to the contractor, who, prior to the execution of the contract, had been in possession of the completed plans and specifications. The work of constructing the building was begun, but was not completed within the ten months stipulated, and was not finally completed until March, 1919. After the building had been partially constructed, petitioner determined to increase its height by two additional stories, and on or about July 17, 1918, procured an estimate of $161,601.88, from the same contractor, for the construction of the two additional stories, the estimate being adopted and covered by written agreement on May 9, 1918. During the construction of the building petitioner paid to the contractor the sum of $358,624.51. It also gave to the contractor notes aggregating $285,047.23, making a total of over $643,000 paid either in cash or represented by negotiable instruments delivered to the contractor. These payments were made by different officers of the petitioner company, independently of each other, one of whom was absent in another city most of the time during the construction of the building; and they were made without exact knowledge of the total amount of cash and notes paid to the contractor, and with the belief that the work of erecting the building was being competently, skillfully, and intelligently done .by the contractor, and that the cost of erection would not exceed the estimate and the contract price mentioned. Petitioner was not aware that the payments exceeded the sums actually specified in the contracts, the contracting partners positively stating to the contrary, and petitioner having confidence in them at that time. In addition to the total maximum contract price of $486,000, petitioner was to pay to the contractor ten per cent. thereof, and to the architect an additional per cent. as commission. At that time petitioner believed that Brown was competent, that as supervising architect he was discharging faithfully and competently his duties, and that the contractor was exercising due diligence in the erection of the building, in the purchase of materials therefor, in the employment of labor, and in other matters

essential to the construction of the building; but petitioner alleges that neither the architect nor the contractor was competent, that neither of them discharged the duties imposed upon them by the contract for the construction and the supervision of the building, and that as a result the building was extravagantly and wastefully erected, at a cost claimed by the contractor and the architect far greater than the total aggregate maximum contractual price for said work. On July 3, 1919, after the commencement of the present suit A. V. Gude Jr., as surviving partner of Gude & Company, the contractor, filed a claim of lien against the property of petitioner, aggregating the total sum of $403,225.30. Had the contract been faithfully, diligently, and competently carried out, petitioner would have owed the contractor, for the erection of the building complete, a sum less than $486,000, plus the ten per cent. upon the cost stipulated under the contract, and an additional ten per cent. to Brown as supervising architect. The total payments heretofore made, cash and notes, aggregate $643,000. The contractor is now asserting, through the claim of lien, an indebtedness of the additional sum of $403,000. In fact petitioner in the payments made has overpaid the contractor by more than $157,000. Petitioner is informed and believes that either all or the greater part of its notes so given have been transferred to banks and others; but just how many of said notes are still in the possession of Gude, petitioner is not definitely informed. Had the contractor complied with the contract and skillfully and faithfully erected the building, the total amount which would have been due thereunder would have aggregated less than $534,000, and it has in fact been overpaid to the extent of $157,000. The claim of lien so filed is in wilful and flagrant violation of the contract. Petitioner is not so indebted; but the contractor is indebted to petitioner in the excess sum of more than $157,000, in the event the negotiable instruments issued by petitioner have been so transferred as to be binding obligations upon it. If said notes have not been transferred and are still in the possession of either the Trust Company of Georgia, as executor of the estate of A. V. Gude Sr., deceased, or in the possession of A. V. Gude Jr., surviving partner, then petitioner is entitled to have said notes surrendered, delivered up, and canceled. Said claim of lien was filed for the purpose of embarrassing petitioner and attempting to force further payments of moneys which it does not owe, and of creating a cloud

upon the title of the property and preventing petitioner from dealing therewith as it was legally entitled to do. Brown, the architect, has been actively assisting and co-operating with the contractor and its surviving partner, in the erection of said building and in the gross violation of the contracts with reference to the completed cost thereof. He has asserted a claim for a large amount against petitioner; he has threatened to enter and take possession of the building, and to control the renting thereof; and he has asserted the right to collect the moneys due by the tenants of the building. Petitioner has entered into no contract giving him any of said rights, nor does the law confer upon him any such rights; and to permit him to carry these threats into execution may involve petitioner in a hopeless wrangle with its tenants, and may cause it great and irreparable loss in dealing with its tenants, and in conducting and operating the building. The building is completely occupied with a high class of tenants. Brown has recently, with one of these, undertaken to enter into a long-time lease, contrary to the express directions of petitioner and without its consent. No authority whatever has been granted by petitioner to Brown to take possession of the building, to conduct it, or otherwise to interfere with it. Petitioner is not informed as to the nature or value of the estate left by A. V. Gude Sr., but is informed and believes that A. V. Gude Jr. is of doubtful financial responsibility, is in great financial straits, and has recently mortgaged all or practically all of the real estate owned by him or in which he has an interest; and it is necessary, under the circumstances, that the executor and surviving partner of the contractor firm be enjoined from selling, transferring, or disposing of any of the notes so given. Petitioner is entitled to have the notes in excess of the contract price delivered up and canceled, and to have the claim of lien canceled and removed as void and a cloud upon the title. Petitioner is ready and willing to pay any sum that may be still due upon the contract, upon having it ascertained who are the present owners and holders of the notes. Upon this ascertainment, and upon the discharge by petitioner of such notes so outstanding, aggregating with the cash payments the total maximum contract price for the building, petitioner is entitled to be discharged from any and all claims in behalf of the contractor. The building was to be completed within ten months from the date of the contract; in fact it was not com-

pleted until March, 1919, delivery being delayed ten months beyond the contract period. It had been fully rented before it was ever completed, except certain of the stores, and such rental during the period of time of incompletion aggregated for the ten months about $60,000; and for this sum, in addition to the excess payments and notes, the estate of A. V. Gude Sr., and A. V. Gude Jr., the survivor, are liable. Petitioner is remediless at law. It is necessary for an accounting to be had, showing the real and true cost of said building; what, with proper exercise of due skill and diligence, would have been the cost of the building, and how much less than the maximum contract price this would have been; the amount of loss which petitioner sustained by a failure to deliver the building when the contract called for delivery; and the total amounts of cash paid and of notes given by petitioner; who now hold the notes, and how and when and for what consideration any of these notes were transferred. The prayers were, for such accounting; for judgment cancelling the claim of lien and all notes given by petitioner and in the hands of any of the defendants and which represent any sum in excess of the sum which may be found to be due upon an accounting; that the Trust Company of Georgia as executor, and A. V. Gude Jr., be enjoined from assigning, transferring, or pledging as security any of the notes given by petitioner and now in their possession, custody, or control; that Brown be enjoined from directly or indirectly interfering with the possession of the property, or with any tenant in the building, or with its operation, and from asserting any claim against petitioner in any proceeding other than in this cause; and for general relief. The material parts of the contract referred to in the petition are as follows:

" Article I. The contractors, for the consideration of actual cost plus a commission of ten per cent. (10%), will furnish all labor and material and all necessary estimates of cost, and will construct the owner's proposed building at the southwest corner of Marietta and Forsyth Streets in the City of Atlanta, Ga. It is agreed and understood that ' actual cost ' includes all expenses incurred by the construction of the building, except the expenses of the contractor's office and except architect's fees.

" Article II. It is agreed and understood that the building will be constructed and completed according to the plans and specifications and under the directions of A. Ten Eyck Brown, architect.

In all cases of doubt or dispute as to the meaning of the plans and specifications, the architect's decision shall be final.

"Article III. It is agreed and understood that the estimates of the contractors made in writing from completed drawings and specifications and full information will be correct to the extent that the cost will not exceed the estimate more than five per cent. (5%).

"Article VIII. It is mutually agreed and understood that the contractors will complete the building within ten (10) months after they are given possession of the property and are furnished with complete plans and specifications and all other necessary information. However, should the contractors be delayed in the prosecution or completion of the work by the act or neglect or default of the owners, or the architect, or any other contractors employed by the owners upon the work, or by any damage caused by fire, or delays in transportation, or due to the existence of war, or other casualty or calamity for which the contractors are not responsible, or by combined action of workmen in no wise caused by or resulting from default or collusion on the part of the contractors, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all the causes aforesaid, which extended period shall be determined by the usual form of arbitration, provided the contractors and owners cannot agree."

General and special demurrers to the petition were filed. Petitioner filed an amendment amplifying the original petition, and adding the following: Since the filing of the original petition A. V. Gude, as surviving partner of Gude & Company, has filed in the city court of Atlanta a petition to foreclose its alleged claim of lien. The city court of Atlanta possesses common-law jurisdiction alone, has no equitable jurisdiction, and can not grant equitable relief. In the city-court suit Gude has added to his alleged claim of lien certain notes which were discounted by Gude & Company, aggregating $85,625.45, some of which have been paid. Gude has no interest in these notes; and this suit is an attempt to pay the alleged claim of lien to that extent. After the institution of the city-court suit Gude filed a cross-petition in the present cause, in which he asserts the right to recover of this plaintiff the same alleged indebtedness covered by the city-court suit, and to enforce the same alleged claim of lien which is asserted in the city-court

suit. Thus within this jurisdiction Gude has asserted two separate and distinct suits in two separate and distinct courts, for the same alleged cause of action. The controversy can not be disposed of by the city court, either in whole or in part, for want of jurisdiction to grant the affirmative equitable relief to which plaintiff is entitled. It is entitled not only to the accounting before mentioned, but to have the contract with reference to the construction of the two additional stories of the building reformed, for fraud of Gude in illegally inserting two items in the contract for the two additional stories. The prayers are, that Gude be enjoined from prosecuting or taking any other step in the city-court suit, and be required to assert in the present cause, as he has done, the matters covered by said suit; that the contract representing the cost of the two additional stories be so reformed as to strike therefrom the two items so inserted; that it be decreed that the contract price for the two additional stories is the sum of $123,596.88; and for accounting, and for all the relief prayed for in the original petition. By further amendment it is alleged that the contract of July 30, 1917, was based upon the estimate of June 28, 1917, of $375,000, and but for this estimate petitioner would never have entered into said contract; that said estimate was based upon drawings and specifications furnished by the architect to the contractor, and Gude had in his possession all of the information from the architect which said Gude & Company thought would be needed; that the plans and specifications were altered from time to time by the architect, without the knowledge or consent of petitioner; that Gude & Company knew of these alterations and that they were made without authority; and that these alterations and changes materially increased the cost of the building.

The petition as amended was demurred to on general and special grounds. The judge sustained the general demurrer and dismissed the suit on the ground that the petition as amended set forth no equitable cause of action, and that the plaintiff was not entitled to the relief prayed for. Other material facts are stated in the opinion.

*Charles T. & John L. Hopkins,* for plaintiff.

*Smith, Hammond & Smith* and *Rosser, Slaton, Phillips & Hopkins,* for defendants.

HILL, J. (After stating the foregoing facts.) Brown-Randolph Company owned a city lot on the southwest corner of Marietta and

Forsyth Streets in the City of Atlanta, on which it decided to construct a building. Before the written contract for the construction was entered into, Gude & Company addressed the following letter: "Atlanta, Ga., June 28th, 1917. Mr. A. Ten Eyck Brown, Architect, Forsyth Building City. Dear Sir:—In·regard to the building you propose to have erected on the southwest corner of Forsyth and Marietta Streets, this city. We have made a careful estimate of the cost from your plans and outlined specifications, and we find that the building will cost completed, including all mechanical equipment, elevators, electric fixtures, etc., $375,000 including our commission, but not including the architect's commission. Very truly yours, Gude & Company." On July 30, 1917, a contract was entered into between Gude & Company and Brown-Randolph Company, the material portions of which are given in the foregoing statement of facts. In this contract no express reference is made to the letter from Gude & Company to A. Ten Eyck Brown, just set out. The present equitable petition was filed by Brown-Randolph Company against A. V. Gude as surviving partner of Gude & Company, the Trust Company of Georgia as executor of A. V. Gude Sr., and A. Ten Eyck Brown, praying for an accounting; for cancellation of the alleged claim of lien and all notes in the hands of the defendants, given by the plaintiff, which represented any sum in excess of the amount that might be found to be due by plaintiff to Gude & Company; and for injunction against assigning or transferring as security any of the notes.given by plaintiff, in the possession, custody, or control of defendants, and against interfering with the plaintiff's possession of the property, or asserting against plaintiff any claim in any proceeding other than the present cause. The petition was demurred to on general and special grounds. The court sustained the general demurrer and dismissed the petition, and the plaintiff excepted. The court held that the plaintiff had a complete remedy at law, and that a court of equity had no jurisdiction of a case like the present.

In the view we take of this case, regardless of whether a court of equity or a court of law has jurisdiction, the controlling question is whether the petition sets out a cause of action against the defendant. It will be observed that the letter written by Gude & Company to A. Ten Eyck Brown was not addressed to the plaintiff in this case, and it nowhere expressly appears that A. Ten Eyck

Brown was the agent of the plaintiff. In order for the plaintiff to recover on the basis of the letter being made a part of the contract, it must appear that A. Ten Eyck Brown was the duly constituted agent of the plaintiff, and that the letter was a part of the contract. As stated above, the letter is not referred to in the contract expressly or by necessary implication; and therefore the letter cannot be said to be a part of the written contract of July 30, 1917. It will be seen from the terms of the written contract itself that the contractors, " for the consideration of actual cost plus a commission of ten per cent., will furnish all labor and material and all necessary estimates of cost, and will construct the owner's proposed building," etc. It was also agreed and understood that " the building will be constructed and completed according to the plans and specifications and under the directions of A. Ten Eyck Brown, architect. In all cases of doubt or dispute as to the meaning of the plans and specifications, the architect's decision shall be final. Also, " that the estimates of the contractors made in writing from completed drawings and specifications and full information will be correct to the extent that the cost will not exceed the estimate more than 5 per cent." It is contended by the plaintiff that the contractor, Gude & Company, guaranteed to construct the building at a total cost of $375,000, as stated in the letter of June 28, 1917. But it will be observed that when this letter was written there was no written contract between Brown-Randolph Company and Gude & Company, and, so far as appears in the record, there were at that time no ": completed drawings and specifications and full information." It is true that in the amendment to the petition it is alleged that the letter of June 28 was a part of the contract of July 30 ; but such allegation must be construed as a mere conclusion of the pleader, or as an effort to vary the terms of the written contract, as there is nothing in the contract itself to justify this allegation and conclusion. The contract itself shows that the letter was not made a part of the contract, nor is there in the petition or either amendment any allegation that when the estimate was made by Gude & Company on June 28 they had in their possession completed plans and specifications and full information. It is alleged that Gude " had in his hands and possession all the information from the architect which said Gude & Company thought would be needed," but no such plans and specifications are attached to

19

the petition, nor is their substance therein set out. The estimates that were to be binding were those made after completed plans and specifications and full information had been given to Gude & Company. The question, therefore, is whether the completed plans and specifications and full information as contemplated by the contract were in the hands of the contractor on the date that the contract of July 30 was entered into and executed. Even if the letter of June 28 could be construed as a part of the written contract, it does not show on its face that it was made from " *completed* plans and specifications and full information," but that it was simply from " outlined specifications." We think that the facts alleged in the petition do not show that the letter of June 28 was a part of the contract (except as a conclusion of the pleader), and that the estimate of $375,000 made on that date was not the estimate provided for in the subsequently executed written contract of July 30, which is plain and unambiguous. If any previous negotiations between Gude & Company and the plaintiff were had, and they were consistent with the written contract, they will be construed as being merged into the contract; and if, on the other hand, any preliminary negotiations were had between the parties which were inconsistent with the written contract, they would be eliminated by the contract itself. But surely no preliminary estimates between Gude & Company and A. Ten Eyck Brown, before the execution of the written contract, could bind Gude & Company relatively to the plaintiff, in the absence of an allegation to the effect that the architect was the agent and acted for the plaintiff; and there is no such allegation in the petition. We cannot, therefore, look to the letter from Gude & Company to the architect as a basis for the suit, but must look to the words of the contract itself; and those words provide that " It is mutually agreed and understood that the contractors will complete the building within ten (10) months after they are given possession of the property and are furnished with complete plans and specifications and all other necessary information." And under the contract of July 30 with Gude & Company the plaintiff was to pay actual cost of the construction of the building, plus a commission to the contractors of ten per cent. It cannot be said that the contract of July 30 confirms the estimate made in the letter of June 28 from the contractors to the architect. That was a tentative estimate, not made upon completed plans and

specifications and full information, but only upon outlined plans and specifications, and, as already said, the contract of July 30 made no reference to the letter of June 28, but on the contrary an entirely new and different estimate was provided. The contract of July 30 provides for a totally different plan for estimating the cost of the building from the estimate of June 28, viz., "actual cost plus a commission of ten per cent." It is insisted, however, that the original petition alleged that the estimated cost of the building of eight stories, as first contemplated, was $375,000. It is true that there is a general allegation to that effect; but if the contract of July 30 is examined, this conclusion will be seen to be without foundation. It is only facts which are well pleaded that can be taken as true on demurrer. The petition and its amendments, therefore, taken as a whole, show that there was no estimated guaranteed offer of $375,000 on the part of the contractors for the construction of the first eight stories of the building. Under the express terms of the contract the building was to be built for actual cost plus ten per cent.

A building contract, to be valid, must have the necessary element of certainty, the same as other contracts. Such a contract may be made sufficiently certain by reference to other documents, or to plans and specifications. But such reference must be sufficient to identify the documents or plans referred to. 4 Elliott on Contracts, § 3637, and cases cited; 6 R. C. L. 867, § 253. In Cruthers v. Donahue, 85 Conn. 629 (84 Atl. 322, Ann. Cas. 1913C, 221, 226, note), it was held: "Where there is a conflict between a building contract and the specifications, the former prevails." In Willamette Steam Mills Co. v. Los Angeles College Co., 94 Cal. 229 (29 Pac. 629), it was held: "Code Civil Proc. sec. 1183, provides, inter alia, that where the amount to be paid for any building exceeds $1000.00 the contract shall be in writing, signed by the parties, and 'shall, before the work is commenced, be filed in the office of the county recorder.' *Held:* That where a contract provided for the erection of a building 'conformable to drawings and specifications . . hereto annexed,' but the drawings and specifications were not filed with the contract, the contract was void, and cannot serve as a basis in determining the rights of those claiming mechanics' liens on the building." See also division 2 of the opinion. In Donnelly v. Adams, 115 Cal. 129 (46 Pac. 916), it was held:

" Where a building contract refers, for a description of the buildings to be erected, to certain plans and specifications of the architect, ' which are signed by the parties hereto,' such plans are an essential part of the contract, without which it is incomplete, and cannot form the basis of a recovery; and where there are no plans ' signed by the parties,' the contract cannot be completed by parol evidence to identify others as the ones referred to."

The contract of July 30 does not refer specifically to the letter and estimate of June 28, and, as previously stated, the contract is unambiguous. Consequently it cannot be varied by parol evidence, so as to include in it the estimate of June 28. Standing alone, the contract provides a complete working basis for the cost of the building, which is cost plus ten per cent. commission. Besides, it will be observed that the language of section 3 of the contract provides that the estimates of the contractors made in writing from " completed drawings and specifications and full information *will* be correct," etc., thus showing that the completed drawings and specifications contemplated did not refer to the past, but to the future; and that language also applies with equal force with reference to the " estimate," not that which *had* been made, but that which *was* to be made in the future. If completed plans and estimates had already been made, in all probability they would have been attached to the contract, or would have been referred to by express and definite reference.

As to the second contract for the two additional stories, it is insisted by the plaintiff that the petition alleges that the defendants fraudulently incorporated in the estimate of cost that they submitted to the plaintiff two items which were covered by the original contract, and that the plaintiff discovered this fact after the institution of the present litigation; also that the petition alleges that the two officers of the plaintiff were attorneys, neither of whom was familiar with the construction of buildings, and they did not know, at the time the contract for the additional two stories was entered into, that the defendants had fraudulently padded the second estimate with these two items amounting to nearly $40,000; and that these allegations are to be taken as true on demurrer, and if this is done the plaintiffs are entitled to have the second contract reformed and these two items stricken. It is true that fraud upon one side and mistake upon the other in the execution of a contract

is the legal equivalent of a mutual mistake; and that where these two things occur, equity has jurisdiction to reform such written instrument. *Venable* v. *Burton,* 129 *Ga.* 537 (59 S. E. 253); *Gabbett* v. *Hinman,* 137 *Ga.* 143 (72 S. E. 924). But by reference to the petition itself it is found that the plaintiffs, by way of amendment to their petition, allege that Gude & Co. took advantage of the then situation, and in preparing the estimate of costs for these two additional stories, " deliberately, illegally, and in defiance of the contractual right of this plaintiff, attempted to so word said estimate for the additional two stories as to include two items which constituted part of the contract for the original eight stories. Said estimates will be exhibited to the court, and it will be observed that it is headed: ' Two Additional Stories and Advance in Labor and Material, Transportation Building, Atlanta, Georgia.' The words ' Two Additional Stories and ' being in red ink, and the words ' Advance in Labor and Material ' being in blue ink. The first item of this estimate is Advance in Labor and Material, $36,205.00; the fourth item is Sidewalk Lift, $1,800.00." So it is contended that when the second contract was signed for the construction of the two additional stories it contained two items which are now objected to as being fraudulently inserted by the defendants, and that such alleged fraud on the part of the defendants and the mistake of the plaintiff in overlooking the same amounted to a mutual mistake, and that such mutual mistake should be relieved by a court of equity reforming the contract to meet the facts as they are alleged to be by the plaintiff. We cannot agree to this contention. The additional estimate was not only in writing but it was signed by the plaintiff; it is plain and unambiguous, a portion of it was written in red ink and a portion in blue ink, so as to attract the attention of both parties to the contract. Parties to a contract who are competent to execute and make it are supposed to know what such contract contains, and the legal effect of it. From the allegations of the petition as indicated we do not think that such a case of fraud is alleged on the one side and mistake on the other as would justify a court of equity in reforming the contract.

From what has been said and the authorities cited, we reach the conclusion that the petition does not allege facts sufficient for a recovery against Gude & Company, on the basis of $375,000 guaranteed cost of the first eight stories of the building, as insisted by

the plaintiff. The petition therefore does not set out a cause of action; and it is immaterial whether the suit sounded in equity or at law. The judge did not err in sustaining the general demurrer and in dismissing the case.

*Judgment affirmed. All the Justices concur, except Fish, C. J., and Beck, P. J., dissenting, and Gilbert, J., disqualified.*

GEORGE, J., concurring specially. I concur specially in the judgment, on the ground that the allegations of the petition do not entitle the plaintiff to the equitable relief prayed.