No. 40,106

THOMPSON CONSTRUCTION COMPANY, *Appellant,* v. JOHN E. SCHROYER, *Appellee* and *Cross-appellant;* SALINA CONCRETE PRODUCTS, INC., *Appellee.*

(298 P. 2d 239)

Opinion filed June 9, 1956.

*H. G. Engleman,* of Salina, argued the cause, and *E. S. Hampton, H. H. Dunham, Jr., John Q. Royce, C. Stanley Nelson* and *Jack N. Stewart,* all of Salina, were with him on the briefs for appellant, and appellee Salina Concrete Products, Inc.

*Ray McCombs,* of Ness City, argued the cause and was on the briefs for appellee and cross-appellant John E. Shroyer.

The opinion of the court was delivered by

FATZER, J.: This is an action to foreclose a mechanic's lien. The trial was by the court, which resulted in a judgment in favor of

plaintiff for a sum less than that alleged to be due, and plaintiff has appealed. Defendant, John E. Schroyer, has cross-appealed from the judgment in favor of plaintiff, and from a judgment in favor of defendant, Salina Concrete Products, Inc., decreeing foreclosure of its mechanic's lien.

The appeal and cross-appeal arise out of the following: On August 27, 1953, Thompson Construction Company (hereafter referred to as appellant) entered into a written contract with John E. Schroyer (hereafter referred to as Schroyer) to construct a filling station on vacant lots owned by Schroyer in Ness City. Appellant commenced the erection of the filling station and the Salina Concrete Products, Inc. (hereafter referred to as Products, Inc.) furnished, in a large part, cement blocks and other material for the construction of the station. Controversy arose between the parties with respect to whether the station was being constructed in conformity with plans and specifications agreed upon in the contract. Appellant completed its work under the contract on January 16, 1954. The filling station was acceptable to Schroyer's lessee, Socony Vacuum Oil Company, but not to Schroyer as the owner. When Products, Inc., was not paid for the materials furnished Schroyer, it filed its verified statement for a mechanic's lien on January 30, 1954. Appellant filed its verified statement for a mechanic's lien on March 27, 1954. On June 18, 1954, appellant instituted this action to foreclose its mechanic's lien. It made Schroyer, Products, Inc., and others, parties defendant. Products, Inc., filed its anwer and cross-petition to foreclose its mechanic's lien.

Schroyer filed an answer to appellant's petition, and also filed a cross-petition. His answer admitted ownership of the real estate, subject to a mortgage and to a lease in favor of Socony Vacuum Oil Company; and, the execution of the contract, but he specifically denied any indebtedness to appellant. He affirmatively alleged appellant failed and neglected to follow the plans and specifications agreed upon to construct the building; that there were numerous errors in the construction of the building; that he had repeatedly requested appellant to correct such errors caused by appellant's fault; that on November 7, 1953, he paid appellant $1,000 and refused to make additional payments until he was furnished separate itemized time sheets for work being done for actual construction and for correction of errors in construction due

to appellant's fault; that he was never furnished such time sheets; that appellant never completed such filling station, but abandoned work thereon on or about November 18, 1954; that prior to such abandonment, appellant's work on such station was defective and contrary to good building practices; and, that after such abandonment, appellant rendered no statement or bill to Schroyer except a copy of the mechanic's lien statement.

The following is a summary of the condition of the building on November 18, 1954, as alleged by Schroyer: That the northeast corner of the building was out of plumb; that a flat roof had been installed whereas the plans and specifications of Socony Vacuum Oil Company called for a four-inch pitch roof with slope to the rear of the building; that the roof was repaired but still leaked; that lintels over the doors were too low; that the overhead doors were required to be cut off two inches to fit the openings; that the window frames were not the frames specified; that electrical aid conduits were not in the walls; that 1,500 to 1,600 square feet of concrete driveway was cracked and crumbling; that the doors were below floor level; that the floor drain was four inches below floor level; that the stucco was peeling off the northeast corner; that the coping around the top of the building was cracked; that the sewer trench was dug too deep; that the shelving had not been installed; that the painting was not finished; that the electrical wiring was not finished according to plans and specifications; and, the outside lights were not connected.

Schroyer's cross petition alleged that pursuant to the contract between appellant and himself, appellant entered upon his property to construct and erect a filling station according to plans and specifications of Socony Vacuum Oil Company; that the real estate was under lease to such oil company, and the construction of a filling station thereon was the basis for the contract between Schroyer and appellant; that appellant did attempt to construct the filling station according to such plans and specifications, but through errors and omissions in construction, some of which were detailed in Schroyer's answer, it was necessary for Schroyer, at his own expense, to correct such errors and defects as could be corrected without further detriment to the building project, and to pay the sum of $880 for extra labor and material; and, that he had been permanently damaged in the sum of $10,000 by reason of appellant's errors in construction. The prayer was that Schroyer recover from

appellant the sum of $10,880, or in lieu thereof, appellant be required to complete said filling station in accordance with plans and specifications of Socony Vacuum Oil Company as appellant agreed to do. Appellant filed a general reply to the answer and cross-petition of Schroyer, and renewed its prayer for judgment.

The cross petition of Products, Inc. alleged that pursuant to orders placed by Schroyer it shipped on September 10, 1953, and October 8, 1953, materials of the value of $1,475.50, which were used and consumed in the construction of the filling station on real estate owned by Schroyer, and prayed for foreclosure of its mechanic's lien. Attached to the lien statement were four copies of invoices, each being headed, "Charge to John E. Schroyer, d/b/a Ness City Lumber Company, also d/b/a Schroyer's, Inc., Ness City, Kansas."

To this cross petition Schroyer filed a general denial, and specifically denied he was indebted to Products, Inc., or that it had a valid lien upon the real estate described.

With the issues thus joined, the cause was tried by the court in March, 1954, without a jury. Schroyer demurred to appellant's evidence, which was overruled. He did not stand on his demurrer but introduced his evidence, and rested.

On May 14, 1955, the trial court filed its findings of fact. Findings 1 and 2 read:

"From plaintiff's claim, which was reduced by agreement and consent in open court to the sum of $4,739.60, the following items are not allowed and are deducted from such claim:

| | |
|---|---|
| Leoti Electrical Shop | $50.00 |
| Diamond Saw Blade | 117.00 |
| Hedlund Electric Co. | 129.00 |
| Tabor Plumbing Co. | 94.00 |

reducing plaintiffs' claim to $4,349.60; and upon the answer and cross-petition of John E. Schroyer, the following items of damage sustained by John E. Schroyer are allowed:

(a) 1500 square feet of the East Driveway at $1.10 per sq. ft., $1,650.00
(b) Cost of replacing the flat roof with a 4-inch pitch roof. . 2,250.00
(c) All other items .............................. 300.00

or a total of $4,200.00 in damages sustained by John E. Schroyer, and for which he is entitled to credit as against plaintiffs' total claim, leaving a balance of $149.60 due from the defendant, John E. Schroyer to plaintiffs, for which plaintiffs have a valid and existing mechanic's lien upon the real estate hereinafter described.

"That Salina Concrete Products, Inc., is entitled to judgment against John E. Schroyer, for materials furnished in the amount of $799.80, with interest,

which judgment is also secured by a valid and existing mechanic's lien upon the real estate hereinafter described."

Thereafter appellant and Products, Inc. filed timely motions for a new trial. On July 18, 1955, appellant's motion for a new trial was denied. The motion of Products, Inc. was rendered moot when the trial court changed its finding by allowing Products, Inc. the full amount of its claim totaling $1,475.50, and decreed foreclosure of its mechanic's lien. On July 18, 1955, judgment was rendered in harmony with the findings of the trial court. Appellant and Schroyer have appealed from this judgment.

Appellant assigns six specifications of error, which it briefs under two general headings: That the trial court erred (1) in allowing Schroyer, as an offset to his admitted debt, the sum of $2,250 as the cost of replacing the flat roof with a four-inch pitch roof; and (2) in allowing Schroyer for damages the sum of $1,650 as the cost of replacing 1500 square feet of concrete driveway at $1.10 per square foot. Since other specifications of error have not been briefed, we shall consider them as abandoned. Appellant's contentions will be considered in the order stated.

## I. The Roof

The contract provided that the filling station was to be built in accordance with the plans of K. W. Thompson, d. b. a. Ken-Roze Architects, and plans as furnished by Socony Vacuum Oil Company, which, "plans shall be precedent in all cases." It is conceded by all parties that Socony Vacuum's blueprints called for a roof with a four-inch pitch to the rear of the building.

Oscar Coulter, appellant's building superintendent who was in charge of the construction of the filling station, was a witness for Schroyer at the trial and testified that when the building was completed on January 16, 1954, the roof was flat and that water stood on the front end of it, "an inch, or an inch and a half" when it rained; that during the construction of the building an attempt was made to fix it by taking off the asphalt roof and mopping on "pitch and gravel" and that the roof was still flat and sloping a little toward the front; that when the roof was repaired, the prefabricated stone coping around the top of the walls was taken off and a poured concrete topping put on; that to repair the present roof with a four-inch pitch roof would cost between twenty-two and twenty-five hundred dollars, "that would be just an estimate." He was asked the question: "What would be necessary to do,

to make that change?" He answered, "Well, you'd have to take your roof off—you would take the sheeting off, but you might be able to get by without it, by shoring up the joints, and, cutting the row of blocks, and, dropping the back—you might be able to shorten it up—you might take one row of blocks off all the way across there and drop it down."

Donald Webster and Herbert Wick were employed by Socony Vacuum Oil Company to operate the station. They arrived in Ness City just before Christmas, 1953, and helped complete the filling station by putting up the shelves and signs; they did some painting, digging and helped the electricians. The filling station was placed in operation January 28, 1954, and has been continuously operated since that time. Donald Webster testified that there were construction errors in the building; that the cap on top of the walls of the building had to be reset as it was cracked; that some of the stucco on the northeast corner was not in good shape and that it had to be patched; that the roof leaked through the old flue hole; that they tried to patch it, but apparently didn't get it "tarred back just right." Herbert Wick testified that the roof leaked in one spot.

Appellant strenuously contends that there was no testimony to show that the permanent value of the station was in any way lessened by reason of construction errors, and that the trial court erred when it reduced the amount of appellant's mechanic's lien by allowing Schroyer a credit of $2,250 as the cost of replacing the flat roof with a four-inch pitch roof. Specifically, appellant contends that the proper measure of damages was not the estimated cost of particular changes necessary to make the building conform to the contract, but rather the loss in property value, if any, to the building, particularly where the correction of defects would necessitate unreasonable destruction of work, or where strict completion would involve expenses greatly disporportionate to the importance of the results obtained.

Appellant cites authorities from other jurisdictions in support of its contention. This court has previously considered appellant's contention in *McCune v. Ratcliff*, 88 Kan. 653, 129 Pac. 1167, where it was said:

"The appellant complains that an erroneous measure of damages was allowed, and therefore that the evidence of the architect and others estimating the expense of remedying defects in the building was erroneously admitted. Particular objections are made to questions asking the necessary expense of rebuilding the front wall of the upper story and of leveling the floor. It is

contended that the measure of damages is the difference between the contract price and what the building would have been worth had the contract been complied with. While that rule may apply in some cases, this case was tried upon the right theory. Defects in the building were shown which must be remedied in order to make it conform to the contract and to make it reasonably fit for use. It appears from the verdict that this can be done by a modest outlay. The entire structure is not to be rebuilt, only the front wall of one story. This and the strengthening of joists and leveling the second floor are the principal items. Other incidental repairs are essential but the main structure will remain. When only particular changes are necessary to make the building conform to the contract, otherwise substantially performed, the reasonable expense of these items affords a correct measure of damages." (l. c. 655 and 656.)

See, also, *McCullough v. Hayde*, 82 Kan. 734, 109 Pac. 176, and *Lofsted v. Bohman*, 88 Kan. 660, 129 Pac. 1168.

In *Thomas v. Warrenburg*, 92 Kan. 576, 141 Pac. 255, the court said:

". . . The court instructed that if the jury found the defendant was damaged in the manner alleged the measure thereof would be the expense reasonable and necessary to be incurred in putting the house in such a reasonable state of excellence as was contemplated by the parties when the material was purchased, including the expense of protecting the building from further damages in the performance of the work. The defendant complains of this and insists that the true measure was the difference between the value of the work furnished and that which was contracted for, and numerous authorities of other states are cited in support of this contention, also *Meyer v. Rosedale*, 84 Kan. 302, 113 Pac. 1043. In the latter case, however, it was said that under the evidence the rule prescribed by the court that the amount of damages, if any, should be the cost of restoring the building to the same condition in which it was before the injury occurred was the correct rule. It appears to be well established in this state that when there is a mere defect in a building which can be remedied by repair the measure of damages is the cost of such repair rather than the difference between the value of the building as constructed and that contracted for. (*Kerns v. Kansas City*, 79 Kan. 562, 100 Pac. 624; *McCullough v. Hayde*, 82 Kan. 734, 109 Pac. 176; *Meyer v. Rosedale*, 84 Kan. 302, 113 Pac. 1043; *McCune v. Ratcliff*, 88 Kan. 653, 129 Pac. 1167; *Lofsted v. Bohman*, 88 Kan. 660, 129 Pac. 1168.) In the latter case it was said:

" 'It is only when the building so far departs from the one contracted for that there is no substantial compliance with the contract that the one actually constructed and the one agreed to be erected are to be valued separately, so that the defendant may be required only to pay whatever the former is shown to be actually worth.' " (l. c. 579 and 580.)

In 57 C. J. S. § 175, Mechanics' Liens, the rule is stated:

"Where there has been a substantial, but not full, performance of his contract by the claimant, the measure of his lien is generally held to be the

contract price less such deductions as should be made because of the errors or omissions in doing the work."

Here, the entire structure is not to be rebuilt. Substantial performance of the contract was proved, except for variations with respect to contract specifications. Schroyer pleaded and proved the roof was not built according to plans and specifications; that it was defective, and appellant's building superintendent testified he estimated the cost of replacing the present roof with one to conform to the contract to be twenty-two to twenty-five hundred dollars. The trial court found the smaller amount of the estimated cost to be the sum reasonable and necessary to make the roof conform to the contract, and it did not err in applying the measure of damages for such amount in accordance with the authorities above set forth.

## II. The Driveway

Appellant's second contention is that the trial court erred in allowing Schroyer, as damages, the sum of $1,650 as the cost of replacing the driveway at $1.10 per square foot; that the proper amount of recovery should be limited to the expense incurred by the owner, or to the reasonable cost of repair if done by others; that there was no testimony Schroyer ever undertook the repair of the driveway himself or engaged others to do so, and that Schroyer could not claim the cost of removal and resurfacing of the entire six-inch slab unless competent testimony supported the necessity therefor.

Appellant's superintendent, Oscar Coulter, testified as follows: That he was present when the east portion of the driveway was poured; that the weather was not warm and that it turned cold during the night; that the poured concrete in the driveway froze; that they took every measure of precaution to keep it from freezing, such as keeping fires around it all night and covered it with everything available; that the top of the concrete peeled off; that it was a six-inch poured concrete driveway. On direct examination he was asked the following questions and made the following answers:

"Q. To tear out a six-inch driveway and repair it, have you an estimate of the cost per square foot? A. We get sixty cents a square foot for pouring six-inch, reinforced slab, and I believe it's fifty cents a square foot, removing— for hauling away. Q. In other words, to remove and haul away and replace it, would cost about a dollar, ten cents, a square foot? A. Yes, sir."

Donald Webster testified that the driveway was standing up except the east slope or drive; that the west slope or drive had good

sized cracks in it. Herbert Wick testified that the driveway was low in three places; that, "every time it rains you have to sweep the drive off"; that the east section of the driveway was coming out—it had been frozen; that the west side looked like it had been frosted a little bit; that the station had been in use since January, 1954; and, that the driveway was in use and a vehicle could pass over any portion of it.

Appellant's testimony was that it could probably resurface the area of the driveway by chipping down three inches and replacing three inches of topping for around $700 to $1,000. The trial court apparently determined that plan of repair would not provide Schroyer with a driveway constructed in a workman-like manner as was required of appellant by the contract, and, as its finding indicates, resolved the issue in favor of Schroyer. The trial court did not err in adopting this theory.

In *Kanzius v. Jenkins*, 98 Kan. 94, 157 Pac. 417, this court held:

"The construction company, which agreed to construct a bridge with a concrete floor, laid the concrete in the latter part of March in the presence and with the consent of an inspector employed by the county commissioners. The night following there was a sudden change of temperature, which resulted in freezing and disintegrating the concrete, so that the floor had to be relaid. No provision was made in the contract to relieve the contractor from the effects of frosts, storms or like casualty. *Held*, that the loss caused by the freezing of the concrete falls upon the contractor." (Syl. 2.)

And, in the opinion it was said:

". . . The rule is that events against which parties may provide in advance in their contract can not be set up as an excuse for the nonperformance of the conditions of the contract. The courts can not insert exceptions that the parties might have done, nor relieve them from the hardships or casualties that they might have guarded against in the contract. (*School Trustees of Trenton v. Bennett*, 27 N. J. Law, 513; *West v. The Uncle Sam*, 29 Fed. Cas. 729, No. 17,427.)" (l. c. 100.)

The contract between appellant and Schroyer is silent with respect to loss as a result of freezing and disintegration of the concrete driveway. No provision was made in it to relieve appellant from such loss. Likewise, there was no provision imposing a duty upon Schroyer to replace the driveway in the event the concrete froze. Appellant's duty was to construct the filling station and driveway pursuant to plans and specifications. This, it attempted to do, but the concrete froze. Under the above authorities, appellant must sustain the loss. Schroyer is entitled to have what he contracted to receive, or to have deducted from that which he

owes appellant, an amount reasonably necessary to provide him with a proper and suitable concrete driveway. The trial court found this amount to be $1,650.50, based upon the necessity of removing and repouring 1,500 square feet of six-inch concrete driveway at $1.10 per square foot. There is substantial competent evidence to support this finding. The trial court did not err in allowing this item of damage in favor of Schroyer, and reducing the amount of appellant's mechanic's lien correspondingly.

### III. Schroyer's Cross-appeal

As previously indicated, on May 14, 1955, the trial court filed its findings of fact in which it found Products, Inc., was entitled to judgment against John E. Schroyer for materials furnished in the amount of $799.80 (later determined to be $1,475.50), and to have its mechanic's lien foreclosed. Schroyer contends that since the cement products and other materials furnished by Products, Inc., were ordered in the name of the Ness City Lumber Company and Schroyer's, Inc., he is not personally liable. The trial court determined this question otherwise. Schroyer filed no motion to set aside or modify such finding, nor did he file a motion for a new trial. No objection of any kind was made by Schroyer until he perfected his cross-appeal on September 12, 1955. There is substantial competent evidence to support the finding, and the trial court did not err in overruling Schroyer's demurrer.

We have carefully reviewed the record, and find no error. The judgment is affirmed.