No. 47,273

Jim Mahoney, Inc., *Appellant*, v. The Galokee Corporation, *Appellee*, and Mid-Continent Casualty Co., *Appellant*.

(522 P. 2d 428)

Opinion filed May 11, 1974.

*John B. Towner*, of Weir, Angwin & Towner, of Pittsburg, argued the cause and was on the brief for the appellants.

*Paul Wunsch*, of Wunsch, Wunsch & Gaumer, of Kingman, argued the cause, and *James G. Shaw*, now deceased, was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The appellant Jim Mahoney, Inc., contracted to build a 64-bed nursing home at Galena, Kansas, under a standard form contract with the appellee, The Galokee Corporation. The contract sum for completion of the project was $179,500.00. The appellant Mid-Continent Casualty Co. furnished the performance bond for the contractor. Construction of the building was begun in February and continued to mid-November, 1969. The building was occupied by The Galokee Corporation in December, 1969, and received approval from the state of Kansas for use as a nursing home. The building has been so used continuously since that time. A dispute arose between Jim Mahoney, Inc., which we will call the contractor, and The Galokee Corporation, which we will call the owner, over failure to complete and construct the building according to the plans and specifications.

Suit was filed by the contractor to recover a balance remaining due under the contract. The owner answered and filed a cross-petition claiming the contractor had defaulted by failing to complete construction, by using inferior materials, by providing poor workmanship and by failing to comply with the plans and specifications of the contract. The case was tried to the court and the court made specific findings of fact on which a final judgment was entered after offsetting a $16,215.48 balance found due the contractor against the sum of $58,960.00, which was the amount of repairs found necessary to bring the facilities up to contract specifications. A net judgment of $42,744.52 was entered in favor of the owner and against the contractor. From this judgment the contractor and its bonding company appeal.

The first point raised by appellants, which we need to consider, is that the court accepted and erroneously used evidence of the

"cost of repairs" to establish the damages. They argue that, since the trial court found the contractor did not substantially perform its contract on seven specific items, it should have used evidence of "diminution of value" instead of "cost of repairs".

In *Phillips & Easton Supply Co., Inc. v. Eleanor International, Inc.*, 212 Kan. 730, 512 P. 2d 379, the general rule as to measure of damages for breach of contract is stated as follows:

". . . The measure of damages recoverable for a breach of contract is limited to such [damages] as may fairly be considered as arising in the usual course of things from the breach itself, or as may reasonably be assumed to have been within the contemplation of the parties as the probable result of such a breach. [Citations omitted.] The evidence allowed to support damages for breach of contract is the best evidence obtainable under the circumstances of the case to show the natural and ordinary consequences of the breach and which will enable the court or the jury to arrive at a reasonable estimate of the loss which resulted. [Citations omitted.]" (p. 738.)

Cases are cited by both parties in which this court has accepted evidence of "cost of repairs" to establish a proper measure of damages. (*McCullough v. Hayde*, 82 Kan. 734, 109 Pac. 176; *McCune v. Ratcliff*, 88 Kan. 653, 129 Pac. 1167; *Big Chief Sales Co., Inc., v. Lowe*, 178 Kan. 33, 283 P. 2d 480; *Thompson Construction Co. v. Schroyer*, 179 Kan. 720, 298 P. 2d 239.) A more recent case approving the use of such evidence to establish a correct measure of damages for breach of a construction contract is *Steffek v. Wichers*, 211 Kan. 342, 351, 507 P. 2d 274.

However, *Lofsted v. Bohman*, 88 Kan. 660, 129 Pac. 1168; *Thomas v. Warrenburg*, 92 Kan. 576, 141 Pac. 255; and most of the cases cited in the foregoing paragraph recognize that evidence of "diminution of value" may be accepted under particular circumstances where such evidence will more reasonably establish the true measure of damages set forth in *Phillips & Easton Supply Co., Inc.* case quoted above. It should be noted that this measure of damages is limited to those damages which may fairly be considered as arising in the usual course of things from the breach itself, *or as may reasonably be assumed to have been within the contemplation of the parties as a probable result of such breach.*

Under Article 25 of the present contract the parties provided for default as follows:

"If the Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents or fails to perform any provision of the Contract, the Owner may, after seven days' written notice to the Contractor and without prejudice to any other remedy he may have, make good such defi-

ciencies and may deduct the cost thereof from the payment then or thereafter due the Contractor or, at his option, may terminate the Contract and take possession of the site and of all materials, equipment, tools, and construction equipment and machinery thereon owned by the Contractor and may finish the Work by whatever method he may deem expedient, and if the unpaid balance of the Contract Sum exceeds the expense of finishing the Work, such excess shall be paid to the Contractor, but if such expense exceeds such unpaid balance, the Contractor shall pay the difference to the Owner."

The record in the present case contains substantial and convincing evidence that the contract was not completed and that the contractor failed to fulfill the requirements of the specifications in seven particulars. Regardless of the finding of the trial court that the contractor had not substantially performed the contract the trial court was correct in accepting evidence on the "cost of repairs" to establish the amount of damages suffered. When a building contract has been so far performed that the building is occupied and used by the owner for the purposes contemplated by the contracting parties and where correction or completion would not involve unreasonable destruction of the work done by the contractor evidence of the cost of correcting the defects and completing the omissions will, as a general rule, be a fair measure of the damages. Not only is this rule firmly entrenched in our case law but the parties, in effect, provided for applying the rule in this case by inserting Article 25 in their contract. Where the parties to a construction contract provide that if the contractor defaults or neglects to carry out the work in accordance with the contract the owner may terminate the contract, take possession of the site and finish the work at the expense of the contractor it may be presumed that evidence of the cost of repairs and work necessary to bring the building up to specifications was reasonably contemplated by the parties as proper to establish the damages which would arise from a breach.

The appellant-contractor next contends that, even if evidence of the "cost of repairs" was proper, there was no substantial, competent evidence to support certain specific items of damage which the trial court awarded the appellee-owner.

The pertinent findings of the court upon which the judgment was entered are as follows:

"6. The Court further finds from all the evidence introduced that the defendant, Galokee Corporation, is entitled to recover on its counterclaim from the plaintiff, Jim Mahoney, Inc., the following amounts to repair the nursing home and its facilities to bring it up to contract specifications:

"(a) Fill and level the area ................................. $2,500.00
"(b) Bring driveways and parking to grade, lay base for asphalt .. 1,000.00
"(c) Asphalt driveways and parking ........................ 3,360.00
"(d) Expansion joints in walls ............................. 2,100.00
"(e) Replace the present roof with a fifteen year bonded roof, per specifications, including expansion joints, insulation and broken trusses ....................................... 42,000.00
"(f) Repair interior of building, replacing tile vinyl base and to re-place sheetrock as needed, etc. ........................ 5,000.00
"(g) Repair exterior of building, including renailing and replacing existing siding as needed, caulking windows and doors, etc., and painting ....................................... 3,000.00

"7. The Court further finds that the plaintiff is entitled to recover from the defendant the balance due on the contract price, in the amount of $16,215.48.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"9. The Court, in accordance with the above-stated findings, generally finds in favor of defendant, Galokee Corporation, and against the plaintiff, Jim Mahoney, Inc., and finds the defendant, Galokee Corporation should have judgment against the plaintiff on its counter-claim in the net amount of $42,744.52."

The first of these items of damages challenged by the contractor is the $1,000.00 awarded to bring the driveways and parking to grade and lay a base for surfacing. There was testimony before the court that the driveways and parking area were not up to proper grade and it would cost $500.00 to complete this work. All witnesses for the owner (contractors Lloyd Meyers, Jack Price, and Gus Baldwin) gave a $500.00 figure. Nowhere in the record do we find any testimony to support the $1,000 figure allowed by the trial court. We find that said judgment against the contractor should be reduced on said item to $500.00.

In *Venable v. Import Volkswagen, Inc.,* 214 Kan. 43, 519 P. 2d 667, it is held the trier of fact should not be allowed to merely speculate in arriving at damages and it is said:

".   .   . One who claims damages on account of a breach of contract must not only show the injury sustained, but must also show with reasonable certainty the amount of damage suffered as a result of the injury or breach. (*Johnston v. Lanter,* 98 Kan. 62, 65, 157 Pac. 266.) In order for the evidence to be sufficient to warrant recovery of damages there must be some reasonable basis for computation which will enable the jury [or trier of fact] to arrive at an approximate estimate thereof. [Citations omitted.]" (p. 50.)

When findings on specific items of damage are used by the trier of fact to arrive at the total amount of the judgment these findings on specific items of damage control the amount of the total judg-ment and if one or more of the special findings are not supported

by substantial competent evidence the amount of the total judgment should be corrected accordingly on appeal. (*Kiser v. Phillips Pipe Line Co.*, 141 Kan. 333, 41 P. 2d 1010; *Thompson Construction Co. v. Schroyer*, supra; *Venable v. Import Volkswagen, Inc.*, supra.)

We do not forget our role as an appellate court in examining appellants' contentions. This court searches the record for the purpose of determining whether there is any competent evidence to support the special findings and judgment. If so this court will not weigh the evidence. Findings of fact determined on conflicting evidence will be held conclusive. *Kramer v. Farmers Elevator Co.*, 193 Kan. 438, 393 P. 2d 998; *Winn v. Sampson Construction Co.*, 194 Kan. 136, 142, 398 P. 2d 272.)

Appellants' next contention is directed to the $3,360.00 allowance for damages for the amount it would cost to asphalt the driveways and parking. They argue that the allowance was erroneous because the contract did not call for asphalt, that the contract called for a cheaper process using a four inch gravel base, sealed and oiled with chips applied and rolled. It appears to be agreed that this cheaper process would have cost only $1,050.00, but because of soil conditions it could not be satisfactorily used. In Plaintiff's Exhibit 6, upon which the trial court found the balance due the contractor to be $16,215.48, credit was allowed the owner in the sum of $1,050.00 for this item.

The confusion over the type of surfacing arose by reason of apparent conflicts between the plans and drawings and the contract itself which incorporated the plans, drawings and specifications by reference. Plaintiff's Exhibit 3 at page 1 is a schematic drawing of the location of the building, driveways and parking area showing the grade elevations. On this drawing underneath the various areas designated as driveways and parking we find the word "asphalt" in parenthesis. We find nothing in the specifications regarding the type of construction for driveways and parking. However, the formal contract signed by the parties (Plaintiff's Exhibit 1) contains the following statement on page 7:

"Parking and drives to be 4″ gravel base, sealed and oiled, chips applied and rolled."

We are confronted with a question of construction of the total contract where there is a conflict between the plans and drawings and the formal signed contract. Here the plans and drawings are referred to and made a part of the contract.

In 13 Am. Jur. 2d, Building, Etc. Contracts, § 12, pp. 15, 16, it is said:

"It is generally held that where a building contract refers to the plans and specifications and so makes them a part of itself, the contract is to be construed as to its terms and scope together with the plans and specifications. Where the plans and specifications are by express terms made a part of the contract, the terms of the plans and specifications will control with the same force as though physically incorporated in the very contract itself. . . ."

However, where there is a conflict between, or an inconsistency in, the provisions of a building contract and the provisions of the plans and specifications, the positive language of the contract should prevail. This rule is stated in the first paragraph of the syllabus of *Cruthers v. Donahue*, 85 Conn. 629, 84 A. 322, as follows:

"When a building contract is accompanied by plans and specifications which are referred to in the contract and made a part thereof, the specifications cannot, in the absence of express provision to that effect in the contract, restrict the scope of the contract or extend it to subjects other than those covered by the terms of the contract. The specifications serve the purpose of explaining and amplifying, but not of adding to, the provisions of the contract. In case of conflict in terms, the contract prevails over the specifications."

(See also *Brown-Randolph Co. v. Gude*, 151 Ga. 281, 106 S. E. 161; *Wilson v. Keefe*, 150 C. A. 2d 178, 309 P. 2d 516; *Perry v. United States*, 146 F. 2d 398 (5 C. A.); and 13 Am. Jur. 2d, Building, Etc. Contracts, § 12, p. 16.)

Applying this general rule the contract provision controls, chips and oil were required, and proper allowance of $1,050.00 was made before arriving at the balance due the contractor as set forth in Plaintiff's Exhibit 6. The allowance of $3,360.00 for placing an asphalt surfacing on the driveways and parking was erroneous and the judgment should be reduced accordingly.

The next item for repairs allowed by the trial court which appellants contend is wholly unsupported by evidence is the $2,100.00 for expansion joints in the interior walls. We have carefully reviewed the evidence in the record and there is plenty of testimony that expansion joints were necessary, required and omitted. However, there is a total absence of any evidence as to the cost of such installation and repair. We cannot find a basis in the evidence for the $2,100.00 allowance and the judgment should be reduced accordingly.

The next item is for $42,000.00 to cover the cost of replacing the total roof with a fifteen year bonded roof including expansion joints,

insulation and double trusses as called for in the specifications. There was much testimony concerning the inadequacies of the roof. The plans and specifications called for double trusses to support the roof in key areas. Single trusses were used, some of these single trusses broke during construction and were not replaced. Instead of replacement they were patched. As a result the roof sagged and water collected in the low places. The employees of the nursing home were kept busy during every rain placing buckets to catch the rain water which leaked through the roof.

Appellants call attention to testimony of their witnesses that the roof could be repaired for varying amounts between $4,350.00 and $10,006.00. The simple fact remains the trial court chose to accept the testimony of contractor Baldwin and the other witnesses to the effect that a total roof was required with expansion joints, insulation and trusses at a cost of from $42,000.00 to $47,500.00. There is competent evidence to support the special finding of the trial court as to the $42,000.00 and such finding of fact, determined on conflicting evidence, is conclusive.

Appellants attack the special finding of the trial court of $5,000.00 for the cost of repairs to the interior of the building to replace the tile vinyl base and the sheetrock in certain areas. Again we have searched the record and the only dollar value for such repairs to the interior of the building appears in the testimony of Lloyd Meyer. The figure given in his testimony is $4,500.00 and the allowance by the trial court of $5,000.00 is excessive and must be reduced to $4,500.00.

The next item of repairs questioned by appellants is a $3,000.00 figure allowed for repairs to the exterior of the building, such as renailing and replacing some of the existing siding, caulking the windows and doors and repainting. A search of the record indicates plenty of testimony that these repairs were needed but no dollar value can be found upon which to base that amount of damage. Accordingly the amount of $3,000.00 allowed is erroneous since this dollar figure is not supported by competent evidence and the judgment must be reduced accordingly.

The final contention of appellants concerns the refusal of the trial court to credit the contractor with $1,910.00 received by the owner, The Galokee Corporation, on a property insurance policy for hail damage to the roof. Appellants cite no cases to support their contention and we know of none. The air conditioning units

were installed on the roof of this building and a portion of the hail damage was attributable to those units apart from the roof itself. The owner had insured the building against such losses and paid a premium for the policy. This was entirely separate and apart from any contract obligation it had with the contractor. We see no reason in justice or equity why the contractor should receive the benefit from the premium paid by the owner when such loss is attributable to hail damage to the roof. The contract of insurance was entered into sometime after the contractor had breached its agreement.

The case of *Anderson v. Rexroad,* 180 Kan. 505, 306 P. 2d 137, has not been overlooked. In that case there were two contracts in existence protecting the same property from fire damage before the loss occurred. The court applied the collateral source rule. The property owner was permitted to collect the whole of his loss but only part of the loss was received from the insurance company and the balance was received from the maker of the third party beneficiary contract. Both of these contracts were in effect for the protection of the property owner prior to the occurrence of the fire. The third party beneficiary contract was an indemnity contract limiting liability to the actual loss sustained by the property owner. The case is not applicable under the facts of our present case.

In summary we hold that evidence of the cost of repairs does establish a proper measure for damages for breach of contract under the facts and circumstances of this case and that the trial court's findings on the specific amounts for repair of the nursing home and its facilities based upon competent evidence in the record should be and the same are hereby corrected as follows:

1. Fill and level the area ........................... $2,500.00
2. Bring driveways and parking to grade and lay base for asphalt .................................... 500.00
3. Asphalt driveways and parking ................. –0–
4. Expansion joints in walls ....................... –0–
5. To replace the present roof with a fifteen-year bonded roof per specifications, including expansion joints, insulation and broken trusses ............. 42,000.00
6. To repair interior of building replacing tile vinyl base and to replace sheetrock as needed, etc. ..... 4,500.00
7. To repair exterior of building, including renailing

and replacing existing siding as needed, caulking
windows and doors, etc. and painting . . . . . . . . . .     –0–

    Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $49,500.00

Accordingly after subtracting the balance due plaintiff, Jim Mahoney, Inc., on the contract of $16,215.48 from the total cost of repairs, the net judgment in favor of defendant and against the plaintiff is hereby corrected on the counter-claim to a net amount of $33,284.52.

The judgment is affirmed as modified.